HAWTHORNE, Justice.
The defendant James Rones, as owner of-the Rish Optical Company, inserted in a daily newspaper published in New Orleans an advertisement substantially as follows:
NOW IN NEW ORLEANS!!! Rish brings you the finest optical service anywhere !! . . Highly experienced opticians to carefully fit your glasses. Whether it be a broken lens or a new pair . . . skilled hands, plus precision machinery, will ■ — in a matter of hours — have them completed . . . Rish celebrates our New Orleans opening with this sensational event,!! 1 SAVE $7 to $18 ■
GLASSES $9.75
35 New and Exciting Styles
Oculists’ Prescriptions Filled
One-Day Service
147 BARONNE, Across from Pere Marquette Bldg.
(All italics ours,)
As a result of this advertisement the defendant was charged in a bill of information with• violating LSA-R.S. 37:1063(9), which provides:

"No person shall:

***** *
“(9) Advertise as free or for a price, any of the following: The examination, or treatment of the eyes; the furnishing of optometrical services; or the furnishing of a lens, lenses, glasses, or the frames or fittings thereof.”
The bill of information charged the offense denounced by the statute in two counts, (1) that the defendant willfully and unlawfully advertised as free or for a price the furnishing of optometrical services, and (2) that he willfully and unlawfully advertised for a price the furnishing of a lens and lenses and glasses and the frames and fittings thereof. Defendant filed a motion for a bill of particulars, and in response the State informed him that the optometrical services advertised were “that opticians were available to fit glasses, repair broken lens or complete a new pair”, and that the advertisement of lenses, etc., was for the general public upon a retail basis.
To the bill of information as thus amplified the defendant filed a demurrer and a motion to quash, which were overruled. After trial he was adjudged guilty upon both counts and sentenced to pay a fine of $350.00 or to serve seven months in the parish prison on each count, the sentences to run concurrently.
The first matter for our consideration is the appellant’s contention in his demurrer that the bill of information as amplified by the bill of particulars shows as to the first-count that the defendant was advertising the furnishing of optical services, which is not within the prohibition of the statute regulating the profession of optometry, LSA-Revised Statutes, Title 37, Chapter 12, Sections 1041 et seq. Section 1041 (3) defines “optometry” as follows:
“ 'Optometry.’ . means that practice in which a person employs or applies any means other than the use of drugs, medicines, or surgery for the measurement of the powers and testing the range of vision of the human eye, and determines its accom-modative and refractive state, general scope of function and the adaptation of frames and lenses to overcome errors of refraction, and restores as near as possible with these mechanical appliances normal human vision.”
The problem, then, is whether the advertisement of “highly experienced opticians to carefully fit your glasses” was an advertisement of the furnishing of optometrical services within the meaning of the statute.
According to the definition of optometry quoted above, the optometrist adapts frames and lenses to overcome errors of refraction and restores as nearly as possible with these mechanical appliances normal human vision. The optician, on the other hand, as pointed out by the appellant, is engaged in the busi-' *102 ness of furnishing lenses to customers' on the prescriptions of licensed optometrists or qualified physicians, putting the lenses into frames selected by the customer, and fitting the frames to the face.
The words “adapt” and “fit” are synonymous. According to Webster’s New International Dictionary (2d ed.), the word “adapt” means to make suitable; to fit, or suit; to adjust; to alter so as to fit for a new use; to render fit by changing, and the word “fit” means to make fit or suitable; to' adapt to the purpose intended; to bring to a required form or size; to shape aright; to adapt to a model; to adjust.
The practice of optometry as defined by the statute includes the fitting (adaptation) of frames and lenses to overcome the errors of refraction, etc., and the advertisement states that opticians are available “to carefully fit your glasses”. The word “fit”, used in this advertisement without limitation, would convey to the reading public that opticians are available to fit glasses for all purposes, necessarily including the fitting of frames and lenses to overcome errors of refraction. “Fitting glasses” means fitting them to the eyes as well as to the face. Although the defendant, an optician, may be actually engaged only in rendering optical services, such as fitting glasses to the face, adjusting the nosepieces, etc., for comfort and improving the appearance, the advertisement in the instant case does not so specify. Its broad, unqualified language is therefore an advertisement for the furnishing of optome-trical services, which is denounced and prohibited by the statute.
The courts of other states have considered whether fitting glasses is an optome-trical service, and have concluded that it is. See Rowe v. Standard Drug Co. (Rowe v. May Co.), 132 Ohio St. 629, 9 N.E.2d 609; Rosenthal v. O’Hara, 40 Pa.Dist. & Co. 568; Dellinger v. Arkansas State Board of Optometry, 214 Ark. 562, 217 S.W.2d 338.
In Rowe v. Standard Drug Co. et al., supra [132 Ohio St. 629, 9 N.E.2d 617], the owner of an optical business inserted an advertisement in the paper which contained the words “Proper Glasses Quickly Give Relief” and “Fitting by Expert Optician”: Of this advertisement the court said:
“ * * * This advertisement was calculated to mislead the reading public by giving the impression that Adelson, optician, furnished and fitted proper glasses. Fitting glasses means fitting them to the eyes as well as to the face; the only fitting the optician can do is to the face by frame bending. ***"
Another advertisement considered in the same case stated that an optical department furnished glasses “well fitted”. Of this advertisement the court said:
“ * * * This constituted an unlawful holding out that he [the advertiser] was engaged in the practice of optometry, and what has been heretofore said regarding-such a course of conduct is applicable.”
In his demurrer to the second count in the information as amplified by the bill of' particulars, appellant contends that the statute does not apply to him because he is a retail dealer, and retail dealers are specifically excepted from the provisions of the statute by Section 1065 thereof. This section provides insofar as pertinent:
“The provisions of this Chapter shall not apply to * * * retail dealers selling glasses as merchandise in their established places of business. * * *
“No retail dealer shall directly or indirectly, advertise through any medium the sale of glasses, or peddle, solicit, sell, or offer for sale glasses from door to door, or house to house, or away from his permanent established place of business.”
This section in the first sentence exempts from the provisions of the chapter retail dealers selling glasses as merchandise in their established places of business, but the second paragraph of this same section provides an exception to this exemption by prohibiting retail dealers from directly or indirectly advertising through any medium the sale of glasses. No one reading this section could get the impression that the *103 exemption is unqualified. After exempting retail dealers from the provisions of the chapter, the lawmakers in the next sentence began qualifying that exemption by providing that it is unlawful for any pérson, except those licensed to practice under the provisions of the' chapter, to have certain equipment or to do certain specified acts, and the second paragraph of the section makes it manifestly clear that no retail dealer shall advertise.
 Looking at the statute as a whole, as we must, to determine its meaning, we see that it is a general one defining and regulating the practice of optometry, and by one of its many provisions prohibits any person from advertising the furnishing of glasses, lenses, etc., free or for a price. Section 1065 exempts generally retail sellers of glasses from the provisions and regulations applicable to optometrists except as to certain specified particulars provided further in that same section, and the provision is plain that no retail dealer, regardless of the general exemption, shall advertise through any medium the sale of glasses or sell glasses away from his permanent established place of business.
To our minds the statute is clear and unambiguous, and the source of this particular section of the Revised Statutes, Act 172 of 1942, Section 2, amending and reenacting Section 19 of Act 193 of 1918, supports our interpretation. It provided that “This Act shall not apply to Retail Dealers, except as hereinafter provided,” and contained in the second paragraph the identical prohibition against advertising by a retail dealer as appears in the Revised Statutes.
The Revised Statutes of 1950 were prepared by the Louisiana State Law Institute pursuant to a mandate of the Legislature of this state, Act 42 of 1942, by which the Institute was instructed to prepare a comprehensive revision of the statutes, to simplify their language, to correct their incongruities, to supply their deficiencies, etc. In carrying out this mandate, the Institute omitted the words “except as hereinafter provided” in the revision of Section 2 of Act 172 of 1942 which amended Section 19 of Act 193 of 1918. The omission of these words merely simplified the language of the act, and in no way changed its meaning, and the meaning of the revision is perfectly clear without them. There is full authority for considering the source of this Revised Statute in interpreting the statute if we had found it necessary to do so. See Viterbo v. Friedlander, 120 U.S. 707, 7 S.Ct. 962, 30 L.Ed. 776.
Even though the defendant is an optician engaged in the sale of glasses at retail, he is not excepted therefore from the prohibition in Section 1063(9) against advertising for « price the furnishing of lenses and glasses. In this connection we observe that the second paragraph of Section 1065, which makes it clear that retailers are not excepted from the advertising prohibition, is a broader prohibition than is Section 1063 (9). The advertising prohibited by the last mentioned section is that “free” or “for a price,” whereas the advertising prohibited in the second paragraph of Section 1065 is unqualified as to kind or type for it says “directly or indirectly, advertise through any medium”. In its broadest application, as we shall discuss later in this opinion, this second paragraph may present a serious constitutional question as to whether it is a valid exercise of the police power, but in a limited application, which is all we are concerned with here, it serves to take retailers out of the general exemption in the first paragraph of Section 1065 insofar as that exemption could affect the scope of Section 1063(9), so that retailers are included in the word “person” in that subsection and are prohibited from advertising in the manner denounced by it.
In the motion to quash appellant contends that the statute under which he was convicted is unconstitutional for two reasons. The first is that the provision under which he was prosecuted is unconstitutional because its source, Act 172 of 1942, embraced more than one object and did not have a title indicative of that object, in vio *104 lation of Article 3, Section 16, of the Constitution of Louisiana.
There is no necessity in our discussing the merits of the argument that the 1942 act was broader than its title because the invalidity of the act for that reason would not affect the validity of the Revised Statute under which he was prosecuted. Act 172 of 1942 was specifically repealed when its provisions were enacted as a part of the Revised Statutes. See Section 2 of Act 2 of the Extra Session of 1950. The rule applicable in such a case is set forth in Crawford, Statutory Construction, sec. 129, p. 187, as follows:
“ * * * a law which is unconstitutional simply on account of a failure on the part of the legislature to meet the constitutional requirements pertaining to its passage, becomes a valid law upon the adoption of the code or revision. This is true because the code constitutes but one legislative act, and the defects of a statute constituting a part of the revision or code, are cured through the passage of the latter enactment. * * * ”
See also 2 Sutherland, Statutory Construction (Horack’s 3d ed.), sec. 3708, p. 254; Central of Georgia Ry. Co. v. State, 104 Ga. 831, 31 S.E. 531, 42 L.R.A. 518; Brady v. Cooper, 46 S.Dak. 419, 193 N.W. 246; Cashin v. Northern Pac. Ry. Co., 96 Mont. 92, 28 P.2d 862; Henderson-Waits Lumber Co. v. Croft, 89 Fla. 119, 103 So. 414; Anderson v. Great Northern Ry. Co., 25 Idaho 433, 138 P. 127; Lapland v. Stearns, N.Dak., 54 N.W.2d 748, 752.
In Lapland v. Stearns et al., supra, it was said:
“ * * * It has been held that a statute which fails to comply with a constitutional provision requiring every act to embrace one subject to be mentioned in its title becomes valid upon its incorporation in a proper code or revision duly adopted as such. * * * ”
In Henderson-Waits Lumber Co. v. Croft, supra [89 Fla. 119, 103 So. 414], the syllabus by the court reads:
“The question of whether the title of an act is broad enough to cover certain provisions contained in it is of no moment when the statute containing such provision has been subsequently embodied in the Revised General Statutes.”
The appellant does not contend that the Revised Statutes are broader than the title of the act under which they were enacted, Act 2 of the Extra Session of 1950. Section 16 of Article 3 of the Constitution provides that the Legislature by means of a special statute may enact or revise a system of laws of a general or public nature such as general statutes, and that such statute shall be deemed to embrace but one object and its title need only refer to the general purpose and scope of the statute.
For these reasons appellant’s first contention in his motion to quash is without merit.
The second ground urged by appellant in his motion to quash is that the statute under which he was charged, insofar as it restricts advertising by retail dealers, is unconstitutional because it violates the due process provision of the Fourteenth Amendment of the United States Constitution and of Article 1, Section 2, of the Louisiana Constitution, and contravenes the guaranty of freedom of speech in Article 1, Section 3, of the Louisiana Constitution.
LSA-R.S. 37:1063(9), under which defendant was charged, makes it unlawful for any person to advertise as free or for a price the furnishing of optometrical services or of a lens, lenses, glasses, or the frames or fittings thereof, but in no way prohibits all advertising. For instance, this particular subsection of the statute does not prohibit anyone, a retail dealer or otherwise, from advertising that opticians are available to fit glasses to the face, or that a lens, lenses, glasses, or the frames or fittings thereof are available for sale. Any advertisement which does not offer such services or merchandise for a price or as free would not come within its prohibition. In the instant case appellant makes no contention that his advertisement was not the kind reprobated by the statute, and it was *105 in fact an advertisement of glasses for a price. The question presented is whether the Legislature may thus regulate advertising under its police power.
The practice of optometry, which by its very nature is closely related to the public health and public welfare, is subject to governmental regulation, and the Legislature of the state may under its police power regulate such a profession, and under this power may regulate advertising by optometrists. Melton v. Carter, 204 Ark. 595, 164 S.W.2d 453; Seifert v. Buhl Optical Co., 276 Mich. 692, 268 N.W. 784; Bennett v. Indiana State Board of Registration and Examination in Optometry, 211 Ind. 678, 7 N.E.2d 977; Finlay Straus, Inc., v. University of State of New York, 270 App.Div. 1060, 62 N.Y.S.2d 892; Klein v. Department of Registration and Education, 412 Ill. 75, 105 N.E.2d 758; Abelson’s, Inc., v. New Jersey State Board of Optometrists, 5 N. J. 412, 75 A.2d 867, 22 A.L.R.2d 929; see Semler v. Oregon State Board of Dental Examiners, 294 U.S. 608, 55 S.Ct. 570, 79 L.Ed. 1086; Annotation, Validity of governmental regulation of optometry, 22 A.L.R.2d 939, 943.
The question presented by this case is whether a statute which prohibits any person, thereby including a retail dealer, from advertising the sale of glasses, lenses, etc., for a price or without cost is a reasonable regulation within the police power of the State and therefore constitutional.
No citation of authority is necessary that the constitutionality of every statute is presumed, and that it is the duty of the court to uphold the statute wherever possible. For this purpose every consideration of public need and public policy upon which the Legislature could rationally have based such legislation should be weighed by the court, and, if the statute is not clearly arbitrary, unreasonable, and capricious, it should be upheld as constitutional.
The courts of other states have had occasion to consider the validity of statutes regulating the advertising by retail dealers of eyeglasses. In some of the cases the courts have concluded that such regulation' was reasonable and proper and constitutional. Commonwealth v. Ferris, 305 Mass. 233, 25 N.E.2d 378; City of Springfield v. Hurst, 144 Ohio St. 49, 56 N.E.2d 185; Ritholz v. Commonwealth, 184 Va. 339, 35 S.E.2d 210; see Ritholz v. Indiana State Board of Registration and Examination in Optometry, D.C., 45 F.Supp. 423; Roschen v. Ward, 279 U.S. 337, 49 S.Ct. 336, 73 L. Ed. 722. The opposite view that such regulation was arbitrary, unreasonable, and had no relation to the public health or welfare has been taken by other courts. Ritholz v. City of Detroit, 308 Mich. 258, 13 N.W.2d 283; State ex rel. Booth v. Beck Jewelry Enterprises, Inc., 220 Ind. 276, 41 N.E.2d 622, 141 A.L.R. 876; see Ritholz v. Johnson, 246 Wis. 442, 17 N.W.2d 590. We are in accord with the views of those upholding such statutes. These courts have decided that the statutes are a reasonable exercise of the police power because they prevent “bait advertising” which attracts the unwary to purchase inferior glasses; eliminate the temptation to, and the pressure upon, customers that result from the assurance that no more than a named price will be charged; protect an uncautious and unwary public from being misled and deceived; prevent the increase in sales and the incidental harm that come from unfitted eyeglasses; eliminate to some extent poor quality and poor workmanship which naturally result from the desire to sell spectacles in quantity at a low advertised price for the purpose of underselling competitors.
Under the provisions of the second paragraph of Section 1065 of the optometry statute, a retail dealer is prohibited from directly or indirectly advertising through any medium the sale of glasses, and under this provision an individual could be charged with advertising the sale of glasses even though the glasses were not offered in violation of Section 1063(9) as free or for a price. If the Legislature intended that under Section 1065 retailers of eyeglasses could be charged for advertising that would not be a violation of Section 1063(9), a *106 more serious constitutional question would be presented, and, to the extent that the prohibition against advertising by retailers in Section 1065 is broader than that in Section 1063(9), a plea of unconstitutionality might have merit. However, we are not called upon here to decide this question for the reason that appellant in this case is being prosecuted under Section 1063(9), a reasonable regulation under the police power of the State.
The motion to quash is therefore without merit.
In three bills of exception reserved during the course of the trial the appellant attacks the district judge’s rulings allowing optometrists who testified for the State to give their opinion as to whether certain acts would be the practice of optometry. The appellant contends that this testimony was inadmissible because the practice of optometry is defined .by statute and the question of what acts are the practice of optometry is a judicial one upon which these witnesses should not have been permitted to testify. The interpretation of a statute is a judicial question, but experts may testify as to the meaning of technical words or terms which pertain to their trade, profession, or occupation. Crawford, Statutory Construction, sec. 225, at p. 412.
The appellant complains also that the trial judge erroneously refused to admit into evidence certain statutes of other states which he argues would show that the functions of dispensing opticians and optometrists overlap. Although the judge refused to admit these statutes into evidence, he considered them, as has this court, and had the benefit of their persuasion. The appellant was not prejudiced by this ruling.
For the reasons assigned, the conviction and sentence are affirmed as to each count.
FOURNET, C. J., absent
HAMITER, J., dissents.