121 So.2d 565 (1960)
Dr. O. E. MICHON, Plaintiff-Appellant,
v.
LOUISIANA STATE BOARD OF OPTOMETRY EXAMINERS, Defendant-Appellee.
No. 9146.
Court of Appeal of Louisiana, Second Circuit.
May 23, 1960.
Rehearing Denied June 22, 1960.
*566 Rogers & McHale, Lake Charles, for appellant.
*567 Racivitch, Johnson, Wegmann & Mouledoux, William J. Wegmann, Trial Atty., New Orleans, for appellee.
GLADNEY, Judge.
The Louisiana State Board of Optometry Examiners, following a hearing upon formal charges for causes enumerated in LSA-R.S. 37:1061(3), (11) and (14), suspended for a period of thirty-one days the certificate under which plaintiff is entitled to practice optometry in this state. Aggrieved thereby, this suit was instituted by Dr. Michon for the purpose of enjoining interference by the Board with his exercise of the right to practice his profession during the period of suspension, and further, to secure a decree vacating the order of suspension. After trial upon the merits, the district court dissolved the temporary restraining order which had previously issued and rejected plaintiff's demands. From the judgment so rendered plaintiff has prosecuted a suspensive appeal.
The defendant Board derives its authority from the provisions of LSA-R.S. 37:1041 et seq. The statute provides for the creation of the Board, fixes the powers thereof, establishes the qualifications and requirements of applicants for licenses and expressly authorizes the Board in Section 1061 to refuse to issue, renew, suspend, or revoke any certificate of entitlement to practice for certain enumerated specified charges, of which are the following:
"(3) Soliciting business from house to house or door to door either directly or indirectly; * * *
"(11) Advertising, in untruthful, improbable, impossible, or misleading statements with reference to the practice of optometry; * * *
"(14) Advertising any price, credit, terms, or agreement with reference to the practice of optometry."
The charges filed against plaintiff asserted violations of (3), (11) and (14), supra, and a hearing in accordance with the provisions of the statute was had on April 8, 1959, at Lake Charles, Louisiana. The members of the Board who conducted the hearing were Drs. H. B. Hewitt, S. Roberts, and R. Shaw, who were assisted by the attorney for the Board. Plaintiff was present and represented by counsel. The Board failed to sustain the charges based on LSA-R.S. 37:1061(3) and this appeal has no concern with that count. However, it did uphold charges of violations under LSA-R.S. 37:1061(11) and (14). As pointed out above the ruling of the Board was sustained by the trial court.
The position of appellant is that the trial court erred in holding:
(1) That plaintiff received a fair trial at the hearing on April 8th; (2) That plaintiff violated the provisions of LSA-R.S. 37:1061(11) and (14), but if this court should affirm such violations, then (3) That the subject statutory provisions are unconstitutional as being vague, indefinite, uncertain, and therefore, void for want of due process.
The first assignment of error contends plaintiff did not receive a fair hearing before the Board which conducted the hearing. His position is that Drs. Hewitt and Roberts should have recused themselves from any participation in the hearing. The only reason advanced for this argument is that both of these members of the Board were also members of the Southwest Louisiana Optometric Society, which organization was responsible for the charges filed against him. It was stipulated in the record that neither Dr. Hewitt nor Dr. Roberts was present at the meeting of the Society when action was taken directing that the charges be filed. Notwithstanding this fact, it is argued without supporting evidence, that these members of the Society were aware of the charges and for this reason alone they were disqualified to sit in judgment upon the rights of plaintiff. A careful examination of the record fails to reveal any indication that either of the Board members possessed any preconceived *568 resolution of the charges against appellant. Furthermore, it was not essential that such charges be filed by a professional society, but they may be presented to the Board by an individual. An additional reason plaintiff cannot claim prejudice on this score is that the charges so made and considered by the Board may be reviewed by the courts, as is being done in this instance. The defense so made is without merit.
Our consideration is next directed to whether or not plaintiff did in fact violate the provisions of LSA-R.S. 37:1061(11) and (14). First, we consider (11) which prohibits "Advertising, in untruthful, improbable, impossible, or misleading statements with reference to the practice of optometry." Plaintiff admitted that during the months of January and February, 1959, he placed certain advertisements in the Lake Charles American Press. These contained, inter alia, the following statements:
"Low PricesYou Cannot Buy Better GlassesEyes Examined ThoroughlyWe Will Not Be UndersoldFinest Glasses at Low PricesGlasses are not ExpensiveJust A Few Dollars Invested in the Protection of Your VisionComplete Optical LaboratoryPopular Prices."
Copies of the ads are to be found in the record of this case. Plaintiff denied that the foregoing statements in any wise violated the provisions of paragraph (11). No testimony to the contrary was offered on behalf of the Board. The issue is purely factual, the resolution of which, therefore, in the absence of other evidence, rests upon proof as to whether the statements are untruthful, improbable, impossible or misleading with reference to the practice of optometry. The burden of establishing the charges by a preponderance of the evidence rests upon those presenting them to the Board. After reviewing the evidence we are of the opinion it does not sustain the charge, and we so hold.
The charges based on LSA-R.S. 37:1061(14) are objected to by appellant on the ground that he did not advertise any specific prices, specific credit, specific terms or specific agreement. In this connection the case of State v. Rones, 1953, 223 La. 839, 67 So.2d 99, 101, is of some interest, but inapposite to the point under discussion. There, an optometrist was convicted under LSA-R.S. 37:1063(9) of the statute which provides criminal penalties for violations of this section, paragraph numbered (9) prohibiting any person to:
"Advertise as free or for a price, any of the following: The examination, or treatment of the eyes; the furnishing of optometrical services; or the furnishing of a lens, lenses, glasses, or the frames or fittings thereof."
After noting that the practice of optometry is closely related to public health and public welfare, and is subject to governmental regulation under the exercise of police power, including advertising by optometrists, the author of the Supreme Court decision made the following observation:
"The courts of other states have had occasion to consider the validity of statutes regulating the advertising by retail dealers of eyeglasses. In some of the cases the courts have concluded that such regulation was reasonable and proper and constitutional. Commonwealth v. Ferris, 305 Mass. 233, 25 N.E.2d 378; City of Springfield v. Hurst, 144 Ohio St. 49, 56 N.E.2d 185; Ritholz v. Commonwealth, 184 Va. 339, 35 S.E.2d 210; see Ritholz v. Indiana State Board of Registration and Examination in Optometry, D.C., 45 F.Supp. 423; Roschen v. Ward, 279 U.S. 337, 49 S.Ct. 336, 73 L.Ed. 722. The opposite view that such regulation was arbitrary, unreasonable, and had no relation to the public health or welfare has been taken by other courts. Ritholz v. City of Detroit, 308 Mich. 258, 13 N.W.2d 283; State ex rel. Booth v. Beck Jewelry Enterprises, Inc., 220 Ind. 276, 41 N.E.2d 622, 141 A.L.R. 876; see Ritholz v. Johnson, *569 246 Wis. 442, 17 N.W.2d 590. We are in accord with the views of those upholding such statutes. These courts have decided that the statutes are a reasonable exercise of the police power because they prevent `bait advertising' which attracts the unwary to purchase inferior glasses; eliminate the temptation to, and the pressure upon, customers that result from the assurance that no more than a named price will be charged; protect an uncautious and unwary public from being misled and deceived; prevent the increase in sales and the incidental harm that come from unfitted eyeglasses; eliminate to some extent poor quality and poor workmanship which naturally result from the desire to sell spectacles in quantity at a low advertised price for the purpose of underselling competitors."
The crux of appellant's argument is that he has not violated paragraph (14) of Section 1061 of the Statute for the reason that the statements contained in the advertisements were worded in general rather than specific terms. It is our thinking that if it is the purpose of the statute to properly regulate the conduct of the profession in order to maintain high standards and obtain better quality of professional work for betterment of public health, the question of whether an advertisement proposes a low price or a popular price in lieu of a specific price, is of no significance. Our learned brother on the trial bench commented:
"Counsel have not cited nor has the Court been able to find any Louisiana case dealing with this question but the Court has found the case of Donohue v. Andrews, [150 Or. 652], 47 P.2d 940, in which the Supreme Court of Oregon in 1935 held in a well reasoned opinion as follows:
"`The precise question then is whether advertising "modern dentistry cheap" is "advertising prices for professional services." True, plaintiff has not stated any definite or fixed price, but he has, nevertheless, through carefully guarded language, conveyed to the public the idea that his charge for dental services will be lower than that ordinarily made for such work. Undoubtedly the word "cheap" connotes a price below the average charge. It means a "low price". Having in mind the purpose and spirit of the statute, we are unable to agree with plaintiff that he can advertise in any manner whatsoever "prices for professional services", if he avoids stating any definite fixed price. We think the advertisement is a plain attempt to evade the spirit of the law. See well prepared opinion of the Attorney-General addressed to the Oregon state board of dental examiners, under date of October 19, 1934. If plaintiff's contention is upheld in this case, he could, with equal propriety, advertise that he would do dental work cheaper than any other dentist in Lane County, or in the State of Oregon. All sorts of catch phrases covering prices as a lure or bait for the public would be the order of the day by those who care not for the ethics of a profession. However, plaintiff is not dealing in commodities, but is a member of a learned profession. The rules of the market place do not apply.
"`That it was the intention of the Legislature to prohibit such kind of advertising relating to prices for dental services is clearly indicated by a consideration of the history of the enactment of the 1933 amendment to section 68-1013, Oregon Code 1930. House Bill 148being the 1933 amendmentas originally introduced provided that a dentist's license could be suspended or revoked for "advertising definite, fixed prices when the nature of the professional service rendered and the materials required must be variable"; but it was amended so as to read in its present form. Hence we *570 conclude that the legislature was not content merely to prohibit advertising fixed or definite prices. It intended to go further and put a ban on all kinds of advertising relative to prices which would have a tendency to lure the ignorant or credulous.'
"An indication of the intent of the Louisiana Legislature is the fact that Act 172 of 1942 Sec. 15(m), provided that the board could suspend a license if the advertisement stated `any price' but in subsection (h) of this act the legislature defined the crime as `To advertise at a stipulated price, or any variation of such prices.' This clearly shows that the legislature was mindful of the distinction between `any price' and `stipulated price'. In 1950 when the legislature adopted the Revised Statutes it dropped any reference to `stipulated price'. Hence we can reasonably conclude it was aware of the distinction and intended to prohibit not only stipulated prices but any kind of advertising relative to price."
The reasoning of the court in Donohue v. Andrews appears to be sound and we conclude that plaintiff did, in fact violate the provisions of LSA-R.S. 37:1061(14). Accordingly, we are of the opinion the trial court was justified in approving the action of the Board with respect to this charge.
Finally, it is urged that the provisions of LSA-R.S. 37:1061(11) and (14) are unconstitutional for the reasons above stated. We refrain from giving consideration to the constitutional validity of LSA-R.S. 37:1061(11) for we have held there is insufficient evidence to sustain the finding of the Board and the district court.
The constitutionality of every statute is presumed, and it is the duty of the court to uphold a statute whenever possible, and every consideration of public need and public policy upon which the Legislature could rationally have based legislation should be weighed by the court, and, if the statute is not clearly arbitrary, unreasonable, and capricious, it should be upheld as constitutional. State v. Rones, supra.
In support of the contention that LSA-R.S. 37:1061(14) is unconstitutional as it empowers the Board to suspend a certificate for advertising any price, credit, terms, or agreement, with reference to the practice of optometry, counsel for appellant relies on State v. Rones, but that case, as pointed out above, involved a different provision of the statute, LSA-R.S. 37:1063(9), the constitutionality of which was sustained. It is argued, however, that similar provisions in other statutes have been held unconstitutional in some states and constitutional in other states. Counsel makes reference to a New Jersey case, Abelson's Inc. v. New Jersey State Board of Optometry, 5 N.J. 412, 75 A.2d 867, 871, 22 A.L.R. 2d 929. The Supreme Court of New Jersey did therein find unconstitutional a provision in the statute R.S. 45:12-11(o), N.J.S.A. which empowered the Board to decide when the advertising was likely to deceive the public, the Court holding the use of such language was too indefinite and held that the provision of the statute was void for want of due process. In the same decision another provision of the New Jersey act was recognized as being valid. The opinion stated:
"R.S. 45:12-11(h), N.J.S.A., empowers the administrative authority to refuse a license to practice optometry or to revoke or suspend a license granted for this reason, among others: `False, fraudulent or misleading advertising of the practice of optometry * * *'
"The phrase `false, fraudulent or misleading advertising' constitutes a standard of conduct sufficiently definite and certain to permit of enforcement by the administrative agency without trenching upon the legislative *571 domain. Generally, it embraces advertising that is intentionally false, deceitful or delusive or calculated to lead astray or to cause error. There can be no difficulty in classifying conduct in relation to this standard. That category does not embrace advertising that is entirely devoid of these elements; it does not serve to bar all advertising, however truthful, merely because advertising in itself is not deemed good professional practice."
We are of the opinion the language used in LSA-R.S. 37:1061(14), prohibiting advertising "any price, credit, terms or agreement with reference to the practice of optometry", is sufficiently definite and certain to permit of proper interpretation in its enforcement. The word "any" is employed purposely to be generally inclusive but its meaning is as clear as that of "specific" or "stipulated". As pointed out by the judge a quo, the legislative intent to be gathered from the use of "any" is to denounce and forbid as unethical conduct any advertising which announces to the public that the professional services of an optometrist are available at a cheaper price and are rendered in a more proficient manner than by others in the profession. As held in State v. Rones, supra, certain state courts have held these statutory regulations to be a reasonable exercise of the police power because they prevent "bait" advertising. Should the entire profession be permitted to indulge in such advertising we do not doubt the standards of the profession and the quality of its services would in general be lowered.
The section of the statute under consideration is constitutional as a proper exercise of the state's police power; it is not indefinite and uncertain, and hence, does not deny due process of law.
For the reasons above set forth, the judgment from which appealed is affirmed at appellant's cost.