146 So.2d 863 (1962)
John H. MICHELL, Plaintiff-Appellee,
v.
LOUISIANA STATE BOARD OF OPTOMETRY EXAMINERS, Defendant-Appellant.
No. 619.
Court of Appeal of Louisiana, Third Circuit.
September 24, 1962.
Rehearing Denied December 10, 1962.
*865 Racivitch, Johnson, Wegmann & Mouledoux, by William J. Wegmann, New Orleans, for defendant-appellant.
Dodd, Hirsch, Barker & Meunier, by Thomas J. Meunier, New Orleans, for plaintiff-appellee.
En Banc.
FRUGÉ, Judge.
This case comes before this Court for the second time. In the first instance plaintiff instituted a declaratory judgment action, which the trial court dismissed after concluding that his administrative remedies had not been exhausted. On appeal we reversed the trial court and remanded the case for further proceedings. Michell v. Louisiana State Board of Optometry Examiners, La.App., 128 So.2d 825. Subsequently the trial court ruled adversely to the defendant herein and it has appealed this judgment.
The pertinent facts of this case are relatively clear and for the most part, uncontested. Plaintiff is a licensed optometrist employed by the Pearle Optical Company, a Louisiana corporation, where he works full time. This corporation employs plaintiff to perform optometrical services for customers of the corporation and the earnings from these services are the property of the corporation which then remunerates plaintiff. On January 27, 1959, the defendant board adopted and transmitted to all Louisiana optometrists a regulation prohibiting them from accepting employment from a corporation as an optometrist and stating that such prohibited employment would be considered to be in violation of LSA-R.S. 37:1061 and, as such, a cause for refusal to renew and/or for suspension or revocation of the violator's certificate to practice optometry in Louisiana (LSA-R.S. 37:1062).
In holding that the resolution by the board was ultra vires, illegal, null and void, our learned trial brother stated (Tr. 57-58):
"R.S. 37:1048, in its pertinent parts, reads:
"Powers of the Board
"`The board may:
* * *
"(2) Promulgate and publish rules and regulations for the purpose of administering the provisions of this Chapter.
* * *
"To the mind of this Court the argument of the defendant Board is constructed upon an entirely false foundation. Very plainly, the quoted portion of the statute merely authorizes the making of rules and regulations `for the purpose of administering the provisions' of the Optometry Act. This is not to say that the Board may enact what is in effect a rule of substantive law regulating the practice of optometry. Such a function is that of the Legislature alone and it has performed that function in adopting the Optometry Act. Inasmuch as the Legislature has merely entrusted to the Board the power of administering the Act, and nothing more, and this in unmistakable language, there is no room for the argument that the Board, in adopting the contested rule or regulation, was exercising *866 a delegated power. The inevitable conclusion is that the resolution of January 27, 1959, is ultra vires. * *"
Plaintiff-appellee in addition to alleging that resolution of the Board was ultra vires, attacks the constitutionality of the Optometry Statute in toto and more specifically certain sections of the act.
Since the trial court found the resolution of the Board ultra vires it had no occasion to consider the constitutional objections raised by the plaintiff. Accordingly, we may also abstain from ruling on these constitutional issues if we should reach the same conclusion of the trial judge, since questions as to the constitutionality of laws should not be entertained except where necessary to the decision of a case. Parish of St. Landry v. Stout, 32 La.Ann. 1278; Belanger v. Great American Indemnity Co. of New York, 5 Cir., 188 F.2d 196; Succession of Bienvenu, 31 So. 193, 106 La. 595; 11 Am.Jur., Constitutional Law, Section 93.
Turning then to the contention that the resolution of the board is ultra vires, this court makes the following observations. LSA-R.S. 37:1048 titled "Powers of the board" provides that the board may promulgate and publish rules and regulations for the purpose of administering the provisions of Chapter 12 (R.S. 37:1041-1065).
Pertinent to the case at bar, LSA-R.S. 37:1061 provides that "[T]he board may refuse to issue or renew, or may suspend or revoke any certificate for any of the following causes: * * *
"(6) Having professional connection with or lending his name to an illegal practitioner; * * *
"(13) Permitting another to use his certificate of registration;" (Emphasis added)
The qualifications and requirements of applicants for a license to practice optometry are set forth in Section 1049 as follows:
"All persons desiring to practice optometry shall:
"(1) Be citizens of the United States, of good moral character;
"(2) Have graduated from an approved high school or school maintaining a similar standard;
"(3) Have graduated from a school or college of optometry approved by the board;
"(4) File with the secretary of the board upon the form furnished an application under oath stating that he fulfills each requirement of this Section and include with the application the papers required by R.S. 37:1050; and
"(5) Pass the examination required by R.S. 37:1051."
It would seem axiomatic that whereas LSA-R.S. 37:1049 requires a practitioner of optometry to be a person and that to be entitled to practice persons must have heretofore been citizens of the United States and every person of good moral character, possessing specified educational qualifications, being a graduate from a recognized school of optometry of specified requirements, must have passed a requisite examination, that no corporation could be registered and thereby be entitled to practice optometry.
The conclusion is further inescapable that since a corporation may not be licensed to practice optometry any professional connection with a corporation by a licensed optometrist would violate LSA-R.S. 37:1061(6).
In 11 Am.Jur., Constitutional Law, Section 234, it is stated:
"It is well settled that it is not always necessary that statutes and ordinances prescribe a specific rule of action. On the other hand, some situations require the vesting of some discretion in public officials, as, for instance, where it is difficult or impracticable *867 to lay down a definite, comprehensive rule or the discretion relates to the administration of a police regulation is necessary to protect the public morals, health, safety, and general welfare.
* * * * * *
"The modern tendency is to be more liberal in permitting grants of discretion to the administrative bodies or officers in order to facilitate the administration of the laws as the complexity of economic and governmental conditions increases."
See National Bank of Commerce of New Orleans v. The Board of Supervisors of Louisiana State University, Agricultural and Mechanical College, 206 La. 913, 20 So. 2d 264.
LSA-R.S. 37:1061 prohibits professional connection with an illegal practitioner. It is true that this section does not define who shall be deemed an illegal practitioner. However, it is self-evident that anyone who cannot meet the qualifications and requirements of Section 1049 is not a legal practitioner. We must therefore conclude that the board neither extended nor limited the intent of the legislature by adopting the resolution affecting corporate employment. Succinctly then, we are of the opinion that the resolution adopted by the board was purely administrative and therefore not ultra vires.
Counsel for plaintiff further contends that LSA-R.S. 37:1042, setting out the method of appointment of the Board of Optometry Examiners is unconstitutional, as violative of the "separation of powers" requirements of Article II, Sections 1 and 2, and Article V, particularly Sections 2 and 11, of the Louisiana Constitution, LSA and the due process clause of the 14th Amendment to the United States Constitution, in that Section 1042 purports to illegally delegate the executive governmental functions of the Governor (power to appoint) and/or the legislative power of the Legislature to a private, non-governmental group.
In an analogous case, Feinblum v. Louisiana State Board of Optometry Examiners, La.App., 97 So.2d 657, our learned brethren in the First Circuit considered the question of whether the Louisiana State Board of Optometry Examiners was illegally constituted and thereby deprived of the right to act in accordance with LSA-R.S. 37:1042 and 1062. In its decision, the Court stated:
"There is no question but that a list of names was submitted to the governor by the Louisiana State Association of Optometry, Inc., after 1937 and the defendant board was appointed from a list submitted by the incorporated association of optometrists. The answer of the defendant board to plaintiff's contention and the holding of the trial court that they are illegally constituted and incapacitated to act by virtue of the fact that they were appointed by the governor from a list presented by the Louisiana State Association of Optometry, Inc., rather than by the Louisiana State Association of Optometrists is that they were appointed by the Governor to a de jure office and they are, therefore, de facto officers. It is also contended that they are de jure officers in that the Louisiana State Association of Optometry, Inc., is the Louisiana State Association of Optometrists within the intendment of the Legislature. However, we will consider the defendant board's contention that they are de facto officers and their right to act cannot be collaterally attacked in this proceeding but can only be attacked in a direct proceeding.
"We find in 67 C.J.S. Officers § 135, p. 438, the following with regard to de facto officers:
"`An officer de facto is one who has the reputation of being the officer he assumes to be, and yet is not a good officer in point of law. Generally a person will be held to be a de facto officer when, and only when, he is in possession, *868 and is exercising the duties, of an office, as discussed infra § 137, his incumbency is illegal in some respect, he has at least a fair color of right or title to the office, as discussed infra § 138, or has acted as an officer for such a length of time, and under such circumstances of reputation or acquiescence by the public and public authorities, as to afford a presumption of appointment or election * * *.'
* * * * * *
"It is also well settled that the right of a de facto officer to exercise the function of an office cannot be attacked collaterally, but that a direct proceeding to try title to the office is necessary. State v. Sadler & Campbell, 51 La.Ann. 1397, 26 So. 390; State v. Schuermann, 146 La. 110, 116, 83 So. 426; State v. Moreau, 153 La. 671, 96 So. 527; State ex rel. Wilkinson v. Hingle, 124 La. 655, 50 So. 616; State v. Williams, 35 La.Ann. 742; State ex rel. Williams v. Portsdorf [Pertsdorf], 33 La.Ann. 1411."
Learned counsel for plaintiff contends that the case at bar may be distinguished from the Feinblum decision in that no constitutional question was raised in the latter. With this contention we cannot agree. The acts of a de facto officer are valid and legal until he is ousted by a direct proceeding. Our Supreme Court said in State ex rel. Floyd v. Hodges, 165 La. 552, 556, 115 So. 747:
"If one in possession of office, under color of title, could not be required, during his incumbency, to discharge the duties of the office, the public might suffer until his title to it could be ascertained in a proper proceeding. The acts of an officer de facto are valid as to third persons and the public. Williams v. Police Jury, 160 La. 325, 107 So. 126; State v. Moreau, 153 La. 671, 96 So. 527."
Thus, even if the board was not legally constituted, its acts must be given effect. To rule on the constitutionality of the board's delegation would be dicta since it can have no bearing on the decision of this case. We therefore must hold that the question of whether the board is illegally constituted must be presented in a direct proceeding to try title and cannot be attacked collaterally.
The next contention made by the plaintiff is that LSA-R.S. 37:1061, if construed by this Court to prohibit corporate employment of optometrists, be declared unconstitutional, as violative of the "equal protection of the law" requirement of the Fourteenth Amendment of the United States Constitution and Article I, Section 15 of the Louisiana Constitution, in that such a prohibition is arbitrarily and unreasonably discriminatory against designated classes of persons (corporation employees) without valid reason for distinction.
Every statute is presumed to be constitutional and it is the duty of a court to uphold its validity wherever possible. Pursuant to this well established principle every consideration of public welfare and public policy upon which the Legislature could reasonably have based such legislation should be considered, and, if the statute in question is not clearly arbitrary, unreasonable or without adequate basis, it should be upheld as constitutional. State v. Rones, 223 La. 839, 67 So.2d 99; Michon v. Louisiana State Board of Optometry Examiners, La.App., 121 So.2d 565.
The reasonableness of a rule prohibiting unqualified persons from practicing optometry cannot be seriously disputed. A corporation cannot obtain a license to practice optometry. To say that this rule can be circumvented by hiring those who are licensed optometrists and thereby reaping the benefits of their practice is to render LSA-R.S. 37:1061 meaningless. To permit indirectly that which is clearly prohibited directly is to disregard the will of the legislature as manifested by Section 1061.
*869 An optometrist who practices his profession as the employee of one who is not a member of that profession is apt to have less regard for his professional responsibility when he has no contractual obligations to his clients, and is primarily responsible to his employer whose non-professional commercial interest undoubtedly lies in the profit which may be derived from the practice of optometry.
We therefore conclude that Section 1061 whose constitutionality is attacked by plaintiff meets the tests of the objections and is constitutional, legal and valid.
Lastly, plaintiff contends that the optometry statute is unconstitutional in toto as violative of the due process sections of the 14th Amendment to the United States Constitution and the "separation of powers" requirements of Article II, Section 2, of the Louisiana Constitution, as well as the "due process" clause of the Louisiana Constitution by delegating unrestricted and unrestrained arbitrary powers to administrative officials without proper guides or criteria and by unconstitutionally delegating legislative authority to such administrative officials.
It is a well settled rule that before a court will consider the constitutionality of a law, he who urges its unconstitutionality must show specifically wherein it is unconstitutional. Sulka & Co. v. City of New Orleans, 208 La. 585, 23 So.2d 224; City of Shreveport v. Pedro, 170 La. 351, 127 So. 865. A general allegation to the effect that an entire statute is unconstitutional without specifying the relationship of this issue to the determination of the case at bar does not meet the requirements of this rule. Furthermore, we find adequate guides set forth in LSA-R.S. 37:1049 and 1061 which are pertinent to the disposition of this case. We therefore find this allegation without merit.
For the above and foregoing reasons, the judgment of the District Court herein declaring the resolution of the defendant Board ultra vires is reversed and set aside and judgment is rendered in favor of the defendant Board, recognizing the January 27, 1959 regulations as proper and in keeping with the provisions of the Optometry Act.
Reversed and rendered.
TATE, J., dissents with written reasons.
TATE, Judge (dissenting).
I respectfully dissent.
Regulations and rulings by an administrative board are ultra vires and null and void when beyond the scope of the power delegated by the legislature to the administration agency. See, e. g., Pearce v. Kramer, La.App., 3 Cir., 128 So.2d 304, certiorari denied. In my opinion, in holding that the present defendant Board has the power to make illegal the employment of optometrists by corporations, my brethren of the majority have read into the legislative delegation of regulatory powers to such board a meaning which is not only absent therefrom, but one which the legislature itself refused to amend the act to provide.
The majority has held that, since a corporation itself may not obtain a license to practice optometry, the board may suspend or revoke the certificate of an optometrist who is employed by a corporation on the legislatively-conferred grounds that such optometrist has a "professional connection with" or is "lending his name to an illegal practitioner", LSA-R.S. 37:1061(6), or is "permitting another to use his certificate of registration", LSA-R.S. 1061(13). That is, the majority feels that the corporation itself is practicing optometry through its employee, and that therefore the licensed optometrist is aiding an illegal practitioner (i. e., the corporation) or is permitting the corporation to use his license.
This is certainly a reasonable construction of the statute, and a substantial number of states with similar statutes have similarly construed it.
*870 But likewise a substantial number of other states have construed similar statutory provisions to the contrary. These other states have held that the corporation itself is not practicing optometry, so that an optometrist employed by it is not aiding an illegal practitioner and is not letting another person use his licensei. e., that the meaning of the statutory provisions is simply to require that qualified optometrists prescribe glasses for persons needing them, whether the optometrists are working for themselves or for a corporation. (E. g., just as a hospital corporation, which may not as a corporation legally receive a license to practice nursing, LSA-R.S. 37:921, may employ nurses without being engaged in the illegal practice of nursing.)
And in Louisiana, as the record shows, this latter was the settled administrative construction of the statutory provisions in question regulating the practice of optometry, LSA-R.S. 37:1041 et seq. From 1918, when the first regulatory statute on the subject was adopted, until 1952, the administrative board enforcing the provisions of the statute never interpreted the provisions thereof to mean that a licensed optometrist could not work for a corporation, or that his employment by the corporation would violate the provisions of the statute by permitting another to use his certificate or by aiding an illegal practitioner. It must be presumed that this settled administrative construction was the meaning of the statutory provisions intended by the legislature, since the legislature did not amend these statutory provisions over the years.
Not only this. In 1956 and 1958 amendments to the regulatory statute were sought to give the Board the power which this court now holds that it had all along to prohibit the corporate employment of optometrists; but the legislature refused to amend the act to so provide.
For instance, by Senate Bill 135 of the 1956 session, an amendment was sought by which the provision set forth at LSA-R.S. 37:1061(6) would be amended to read as follows (the additional languages sought being italicized):
"The board may refuse to issue or renew, or may suspend or revoke any certificate * * * for any of the following causes: * * *
"(5) Having professional connection with, or lending his name to an illegal practitioner of optometry, conducting eye examinations or performing any optometric service, directly or indirectly, as an employee or associate of a person, firm, corporation, partnership or group of persons who are not licensed to engage in the practice of optometry in Louisiana * * *"
(This is the meaning given to the section by the present majority opinion of this court. It is not the meaning given to the section by the settled administrative construction of the rule from 1918 up through abortive efforts by the board to so construe the act in 1952, which finally eventuated in the regulation of 1959, the validity of which the petitioner contests by the present declaratory action.)
The Official House Calendar of the 1956 session of the Louisiana legislature shows that on July 3rd, Senate Bill 135, containing the above and other provisions of like import, came to a vote in our House of Representatives and was defeated.
When, as in the present instance, a statute is ambiguous so that it may reasonably be given two meanings, great weight must be given to the meaning provided by a settled administrative construction over a long period of time. Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111. As this decision also notes, in determining the meaning of a legislative enactment it is proper to take into consideration the legislative history of the statute. Under these criteria, my brethren of the majority are in error in assigning a meaning to the ambiguous statute which is contrary to the settled construction of it for over thirty years and, moreover, a meaning which the *871 legislature itself refused to amend the statute to provide.
The purpose of the courts is to interpret legislation, not to legislate. With deference to the majority, I think they have been persuaded into adopting what may be a desirable construction of the statute by the no doubt commendable aims of the "ethical" optometrists to professionalize their calling (as contrasted with the "commercial" optometrists, who according to the record comprise about half the number of licensed optometrists and whose present employment by corporations will become illegal if the majority opinion stands). The majority nevertheless has adopted a construction of the statute which is contrary to that intended by the legislature, as instanced by the legislative history and administrative construction of the statute over the years.
As a legislator, I might well wish to amend the statute to accord it the meaning now given it by the majority; as a judge I cannot. It is for the legislature, not the courts, to amend statutory enactments.
For the above reasons, I respectfully dissent.

On Application for Rehearing.
En Banc. Rehearing denied.
TATE, J., dissents from refusal to grant a rehearing.