FRUGÉ, Judge.
Subsequent to a hearing upon formal charges for causes enumerated in LSA-R.S. 37:1061(3), (6), (8), (9), (11), and (14), the Louisiana State Board of Optometry Examiners suspended for a period of thirty days the certificate under which plaintiffs, E. D. Akin and L. R. Savoie, are entitled to practice optometry in this state. Thereafter, plaintiffs filed suit for the purpose of enjoining interference by the Board with the exercise of their right to practice optometry during the period of suspension, and further, to secure a decree vacating the order of suspension. The District Court found that plaintiffs had violated the provisions of LSA-R.S. 37:1061(14), but reversed the findings of the Board as to the other violations.- The thirty day suspension was affirmed by the district court. From this judgment, plaintiffs have appealed sus-pensively to this court. The Board answered the appeal praying that that portion of the judgment decreeing plaintiffs had violated LSA-R.S. 37:1061(14) be affirmed, and further praying that the part of the judgment in favor of plaintiffs be reversed and that they be found to have also violated LSA-R.S. 37:1061(3), (8), (9), and (11).
We quote in extenso from the written reasons assigned by the trial judge, since *810 , they -succinctly and, accurately set out and summarized the essential facts of this case, as follows:
“Doctors Akin and Savoie a-re employed by Pearl Inc., a. Louisiana corporation which does business under the name Gordon Optical Company. * *
“On October 17, 1960, Dr. George Isaac, a Lake Charles optometrist, acting as the asserted individual representative of a private group known as the Southwest Louisiana Optometric Society, filed with the defendant Board by letter a number of specific complaints concerning professional activities of the plaintiffs. By letter of date December 21, 1960, addressed to the Board, the attorney for the Society, in an apparent attempt to amend the original complaints, charged additional violations occurring since the writing of the first letter. Finally, by separate letters to the plaintiffs under date of December 28, 1960 the Board advised these parties, in part, as follows:
“ ‘ * * * You are herewith notified that certain charges have been filed against you * * * These charges are that you have violated provisions of .Louisiana Revised-Statute 37:1061, Sub-sections 3, 6, 8, 9, 11, and 14 * *.
“ ‘The charges concern advertisements which have been carried and broadcasted over television and/or raido stations since August 1, 1960. The charges also include advertisements through other medium such as newspaper and advertisements delivered by mail during the same period.’ ”
Concerning the advertisements which form the basis of this dispute, the trial court quoted, the pertinent portions as follows :
“Gordon Optical, a famous name in optical service, an important name to you. There are many reasons why so many of your friends and neighbors prefer to -go to Gordon Optical for visual care for the whole family. --Certainly the expert doctors of Optometry at Gordon Optical are a major factor, for people have learned thát they fit glasses only when glasses are actually needed. Yes, Gordon Optical has a long 'reputation for dependability. This original Gordon Optical guarantee in writing is another reason why Gordon Optical has won so many friends. It not only guarantees your complete satisfaction, but it also guarantees every pair of prescription glasses against breakage for a whole year. Now, no matter how you break them, or how often, Gordon Optical Guarantees to repair or to replace for a whole year * * *. In Gordon Jewelers, 808 Ryan Street, Dr. Aiken, optometrist in charge * * * 2906 Ryan Street in the Southgate Shopping Center, Dr. L. R. Savoie, optometrist in charge * *
Before turning to the substantive aspects of the charges, we deem it necessary to answer certain questions concerning the authority of the Louisiana State Board of Optometry and the procedure which it followed in suspending plaintiffs’ licenses to practice optometry.
It is urged initially that the Board is illegally constituted and thereby deprived of the right to act in accordance with LSA-R.S. 37:1061. This identical issue was considered by this court in Michell v. Louisiana State Board of Optometry Examiners, 146 So.2d 863,- wherein we held that the right of an officer to exercise the function of an office cannot be attacked collaterally, but that a direct proceeding to try title to .the office is necessary. See also Feinblum v. Louisiana State Board of Optometry Examiners, La.App., 97 So.2d 657. This question is therefore not properly before the court. Accordingly, we abstain from expressing an opinion on the matter.
Next, counsel for plaintiffs contends thát the charges as instituted by the Board *811 were vague, malting it impossible for plaintiffs to adequately prepare a defense. As noted by our learned brethren in the trial court, the Board advised plaintiffs of the specific sections of the regulatory act they were charged with violating and enclosed copies of the letters written to the Board by Dr. Isaac and Mr. Tete, counsel for the Southwest Louisiana Optometric Society. Additionally, each plaintiff received verbatim copies of radio and television advertisements allegedly broadcast by the plaintiffs. They were also informed that the alleged advertisements were made between the dates of August 18, 1960 and September 27, 1960.
We are of the opinion that plaintiffs were adequately notified of the nature of the charges. They were aware of the particular advertisement complained of, and the dates on which this advertisement was carried on radio and television. Certainly the law requires no greater specification of charges. See Rogers v. Louisiana State Board of Optometry Examiners, La.App., 126 So.2d 628, 633; Feinblum v. Louisiana State Board of Optometry Examiners, 97 So.2d 657, 663; White Way Pure Milk Co. v. Alabama State Milk Control Board, Ala., 93 So.2d 509, 513.
Plaintiffs next contend that the Board was required to give advanced notice of the alleged violations. As we understand this contention, plaintiffs are urging that the Board should have issued rules or regulations covering the specific violations, before attempting to charge plaintiffs.
Neither party to this suit has cited authority on this issue, and after diligent search we are unable to find a definitive holding that rules and regulations must be promulgated by the Board before it can administer the provisions of this act. It is clear that the Board can neither extend nor limit the intent of the legislature by the adoption of a rule or regulation. Thus, if the advertisement, which forms the basis of this suit is illegal under the provisions of LSA-R.S. 37:1061, it is illegal whether Or not the Board declares it illegal pursuant to a rule or regulation. Feinblum v. Louisiana State Board of Optometry, supra. Furthermore, an examination of the Optometry Act discloses no manifestation of the legislature requiring the Board to issue rules and regulations prior to charging violations of Section 1061. Accordingly, we find no merit to this contention.
Plaintiffs additionally contend that the issues raised by the charges filed before the Board and this court are moot. The basis of this argument, as set forth in plaintiffs’ brief, lies in the fact that immediately after the alleged violations of the act were charged, plaintiffs discontinued the “breakage guarantee” part of the advertisements.
As to this issue, the trial court concluded :
“The- answer to this is two-fold. First, the ‘breakage guarantee’ is only • a part of the extensive advertising campaign which is itself the basis' for the charges made against plaintiffs and under which it is contended that several subsections of the Optometry Act have been violated thereby. Additionally, the defendant Board is not in law required to allow Dr. Pearle.or the plaintiffs to terminate the issue of statutory violation by the simple declaration that the objectable practices will not be repeated.”
We are of the opinion that the trial court correctly resolved this issue. Section 1061 provides that the Board may suspend or revoke an Optometrist’s license to practice ■for certain specified causes, which constitute violations of this section. We find no requirement that the suspensive authority, vested in the Board, is valid only when utilized in connection with a continuing violation. Indeed if we were to construe Section 1061 as plaintiffs Urge, th'e disciplinary powers vested in the Board could be easily defeated by anyone violating this section simply by discontinuing an illegal practice *812 .the moment charges were filed. Certainly, this was not the intent of the legislature. This contention is therefore without merit.
Counsel for plaintiffs next urges that the record does not establish that plaintiffs were responsible for the alleged illegal advertisements.
The record establishes that the composition of the advertisements of this nature is done by professional advertising agencies who submit them to Doctor Pearle and he, if they meet his approval, passes them on to the local optometrists, in this case plaintiffs, for their individual approval. Counsel for plaintiffs admits, in his brief, that plaintiffs, under the above described procedure, had the opportunity to veto all or any part of the advertisement. Thus, plaintiffs read and approved the advertisement. Furthermore, plaintiffs knew the advertisements would be published and that their names would appear in them. Under these circumstances, we find the conclusion inescapable that plaintiffs are responsible for the advertisements being publicized.
Turning now to an examination of Section 1061 of the Optometry Act and the alleged prohibited advertisements, we make the following observations.
LSA-R.S. 37:1061 provides that “[t]he board may refuse to issue or renew, or may suspend or revoke any certificate” for certain specific causes.
Paragraph (3) of this section prohibits “soliciting business from house to house or door to door either directly or indirectly.” It is urged by defendant Board that the advertisement complained of was not a casual or some time advertising program, but rather a saturation campaign, and as such constituted house to house soliciting. The gist of the .defendant Board’s argument ■on this point seems to be based upon the words “directly or indirectly”. Thus, under the Board’s construction of Section 1061 (3), indirect house to house soliciting would necessarily include saturation advertisement, as herein complained of.
While we feel that the defendant Board’s construction of Section 1061(3) is plausible, we are convinced that such was not the intention of the legislature.
The Reporter’s Notes following LSA-R.S. 37:1061 contains the following comments, referring to Acts 1918, No. 193, Section IS, as amended:
“Paragraph (c) of section 15 of the act read: ‘The soliciting of business from house to house or door to door directly or indirectly by the holder of any certificate either himself or through any agent, representative or employee.’ The underlined words have been deleted as covered by ‘directly o.r indirectly.’ ”
Thus while the term “indirectly” necessarily extends the prohibition of house to house soliciting to an optometrist who causes another to solicit business in like manner on his behalf, it does not necessarily follow that advertising by television, ¡radio or newspapers, even on a saturation level, falls within this prohibition. Section 1061 prohibits certain advertising practices by specific enumeration. Had the legislature intended to prohibit all advertising in relation to the practice of optometry, it could have easily done so by promulgating a blanket prohibition. This it has not done. Thus, as a matter of law, plaintiffs’ advertising practices do not fall within the prohibition of paragraph (3) of Section 1061.
Section 1061(8) prohibits “employing or using ‘cap[p]ers’.or ‘steerers’ to obtain business”. A “capper” is defined in Black’s Law Dictionary (4th Ed.), “as a decoy or lure for purpose of swindling”. The same authority defines “steere-r” as “one who gains the confidence of the person intended to be fleeced and who may be said to steer or lead the victim to the place where the latter is to be robbed or swindled”. It is so obvious, as to require no further comment, that plaintiffs have employed neither of these devices, as they *813 are commonly understood, to solicit business. Accordingly, we find that plaintiffs’ advertisements have not violated this paragraph of Section 1061.
Section 1061(9) prohibits “deceiving or defrauding the public”. As will be ■discussed later, we find no evidence that plaintiffs’ misrepresented or misled the public by the use of the advertisements complained of herein. For the alleged illegal advertisements to fall within the ambit of this paragraph, requires at the very least a finding of deceit or untruthfulness on the part of plaintiffs. These findings are absent in the case at bar. We therefore find that the plaintiffs have not violated this paragraph of Section 1061.
Section 1061(11) prohibits “advertising in untruthful, improbable, impossible, or misleading statements with reference to the practice of optometry”. Plaintiffs deny that the advertisements in question in any way violate this provision of the Optometry Act and the trial court found accordingly.
If the advertisements at issue are to fall within the prohibition of paragraph (11) it is incumbent upon those presenting them to the Board to establish that these advertisements were in fact untruthful, improbable, impossible or misleading. Michon v. Lousiana State Board of Optometry Examiners, La.App., 121 So.2d 565, 568. After reviewing the record we are of the opinion that this burden of proof has -not been sustained. The charge is therefore without merit, and we so hold.
As we appreciate the charges based on Section 1061(14) they are directed at the guarantee portion of the advertisements in question. The advertisements proclaim that replacements and repairs of broken glasses will be made “without cost” to the owner for a period of one year. This statement, in our opinion, is tantamount to offering one year’s free insurance against the risk of broken glasses. Paragraph (14) prohibits “[advertising any price, credit, terms, or agreement with reference to the practice of optometry”. We would be unrealistic if we concluded that an advertisement which provides that a valuable service will be performed “without cost” does not relate to price.
As stated in Michon v. Louisiana State Board of Optometry Examiners, supra at page 569:
“The crux of appellant’s argument is that he has not violated paragraph (14) of Section 1061 of the Statute for the .reason that the statements contained in the advertisements were worded in general rather than specific terms. It is our thinking that if it is the purpose of the statute to properly regulate the conduct of the profession in order to maintain high standards and obtain better quality of professional work for betterment of public health, the question of whether an advertisement proposes a low price or a popular price in lieu of a specific price, is of no significance.”
This statement was made concerning the following advertisement:
“Low Prices — You Cannot Buy Better Glasses — Eyes Examined Thoroughly — We Will Not Be Undersold— Finest Glasses at Low Prices — Glasses are not Expensive — Just A Few Dollars Invested in the Protection of Your Vision — Complete Optical Laboratory —Popular Prices.”
The obvious purpose of this prohibition is to prevent “bait” advertising, whereby prospective customers are attracted to an optometrist for reasons other than his professional ability. See State v. Rones, 223 La. 839, 67 So.2d 99, 105. In our opinion, the inducement of a “breakage guarantee” in no way relates to professional ability. Having previously concluded that this guarantee relates to price, it necessarily follows that it is prohibited by Section 1061(14), and we hold accordingly.
The last contention made by counsel for plaintiffs is that LSA-R.S. 37 *814 1061, if construed by this Court to prohibit the advertisements herein, is unconstitutional, being violative of the “due process and equal protection of the law” requirement of the Fourteenth Amendment of the United States Constitution. In this regard, it is urged that such a prohibition is unreasonable and arbitrary and totally unrelated to the accomplishment of any public good.
This court in Michell v. Louisiana State Board of Optometry Examiners, La.App., 146 So.2d 863, stated:
“Every statute is presumed to be constitutional and it is the duty of a court to uphold its validity wherever possible. Pursuant to this well established principle every consideration of public welfare and public policy upon which the Legislature could reasonably have based such legislation should be considered, and, if the statute in question is not clearly arbitrary, unreasonable or without adequate basis, it should be upheld as constitutional. State v. Rones, 223 La. 839, 67 So.2d 99; Michon v. Louisiana State Board of Optometry Examiners, La.App., 121 So.2d 565.”
Concerning the reasonableness of Section 1061(14) the court in the Michon case, supra, stated 121 So.2d at page 571:
“We are of the opinion the language used in LSA-R.S. 37:1061(14), pro-hibitirig advertising ‘any price, credit, terms or agreement with reference to the practice of optometry’, is sufficiently definite and certain to permit of proper interpretation in its enforcement. The word ‘any’ is employed purposely to be generally inclusive but its meaning is as clear as that of ‘specific’ or ‘stipulated’. As pointed out by the judge a quo, the legislative intent to be gathered from the use of ‘any’ is to denounce and forbid as unethical conduct any advertising which announces to the public that the professional services of an optometrist are available at a cheaper price and are rendered in a more proficient manner than by others in the profession. As held in State v. Rones, supra, certain state courts have held these statutory regulations to be a reasonable exercise of the police power because they prevent ‘bait’ advertising. Should the entire profession be permitted to indulge in such advertising we do not doubt the standards of the profession and the quality of its services would in general be lowered.”
We are in complete accord with the views expressed in the Michon case, and therefore find that the statute under consideration is constitutional as a proper exercise of the state’s police power.
For the reasons assigned herein, the judgment of the lower court is affirmed; plaintiffs to pay all costs of this appeal.
Affirmed.