## Ullom, Appellant, v. Boehm.

**644**

Argued April 23, 1958. Before JONES, C. J., BELL, MUSMANNO, ARNOLD and JONES, JJ.

*Bertram Bennett,* with him *Jenkins, Bennett* and *Jenkins,* for appellant.

*Harry L. Rossi,* Deputy Attorney General, with him *Elmer T. Bolla,* Deputy Attorney General, and *Thomas D. McBride,* Attorney General, for appellees.

*George G. Chandler,* with him *Montgomery, Mc-Cracken, Walker & Rhoads,* for amicus curiae.

OPINION BY MR. JUSTICE MUSMANNO, May 26, 1958:
One of the most precious jewels in the treasure chest of democracy is the right of every citizen to sell the fruit of his labors at such price as, according to his own calculations, will profit him most. It would thus appear at first glance that any statue which curtails that right becomes an infringement on constitu-

tional liberties. Specifically, we have before us in this case the consideration of a law enacted by the Legislature which prohibits merchants of eyeglasses from advertising the selling price of their wares. This would seem, it is repeated, to be an abridgement on the prerogative of a businessman to market his merchandise in accordance with his judgment as to what constitutes good business for himself. But the statute in question must be studied not only through the eyes of the merchants but through the scrutinizing vision of the citizens of the Commonwealth.

Proud as we are of our individual liberties, we willingly and gladly surrender the unhampered enjoyment of them in many instances in order that society as a whole may be served and protected. Thus, automobile manufacturers are required to install certain safety features on their mechanical creations, food dispensers must submit their goods to government tests for wholesomeness and salubrity, farmers may not sell milk and butter without meeting established standards of purity. The statute under consideration here is the Act of May 18, 1956, which is an amendment to section 9 of the Act of March 30, 1917, P. L. 21, 63 P.S. §237. Section 2 of the amendment reads: "No person, firm or corporation engaged in or connected with the retail sale or dispensing of frames, mountings, lenses, spectacles or eyeglasses used for ophthalmic purposes shall include in any advertising whether by newspaper, magazine, radio, television, signs, displays, or by any other means, the price or prices of the products used for ophthalmic purposes . . ."

Standing alone, this enactment of the Legislature might appear meddlesome and even arbitrary. Why shouldn't a dealer in eyeglasses, as a dealer in beef or bicycles, be permitted to sell them at a price less than his competitor, and to tell the world that he is

doing so? Is competition not the life of trade? But the statute of 1956 must be read in conjunction with the statute of 1917, of which, as already stated, it is an amendment. The preamble of that Act reads: "Whereas, The eyesight of the citizens of this Commonwealth is endangered by incompetent persons practicing optometry, and due regard for the safety and protection of the citizens demands that only authorized and qualified optometrists shall be permitted to practice optometry: . . ."

It would be difficult, if not impossible, to imagine anything dearer and more indispensable to the enjoyment of life than good eyesight.[1] Thus, no person not entirely bereft of all his senses could possibly complain about the State's regulation of the practice of optometry. The Legislature defined optometry, in the amendment of August 17, 1951 to §1, P. L. 1280, 63 P.S. Pkt. Parts 231, as follows: "The practice of optometry is hereby defined to be the employment of any means or methods, other than the use of drugs or surgery, for the examination of the human eye and the analysis of ocular functions, or the prescribing, providing, furnishing, adapting or employing any or all kinds and types of lenses and prisms, visual training orthoptics, ocular exercises, and any and all preventive and corrective methods for the aid, correction or relief of the human eye, its associated structures, appendages and functions, other than the use of drugs or surgery."

Is the Act of 1956 a relevant and proper extension of the original Act of 1917, as amended in 1951? The plaintiff in this case, George A. Ullom, trading as

---

[1] When King Lear asked his daughters to express to what degree they loved him, Goneril, speaking first, said: "I love you more than words can wield the matter, dearer than *eyesight*, space and liberty."

Price Optical Co., says that it is not. Ullom, who is a dispensing optician engaged in the preparation and sales of lenses, frames and glasses, contends that this legislation offends against Article I, Sections 1, 7 and 9 of the Constitution of Pennsylvania as well as the Fourteenth Amendment of the Constitution of the United States, in that "it impairs the plaintiff's right of freedom of speech," and "constitutes an unauthorized exercise of the police power by arbitrary interference with private business and the imposition of unusual, oppressive, discriminatory and unnecessary restrictions upon a lawful occupation." He asserts further that the enforcement of the Act of 1956 has caused him to suffer immediate and irreparable injury. He sought and obtained a temporary injunction in the Court of Common Pleas of Dauphin County against the enforcement of the Act by the State Board of Optometrical Examiners of the Department of Public Instruction. The court, however, later dissolved the injunction and dismissed the complaint. The plaintiff appealed.

We are satisfied from a reading of the record and a research of the authorities that the action of the lower court was well taken. This Court has already decided that the original Act of 1917 regulating the practice of optometry is a valid exercise of the police power of the State and does not contravene the Fourteenth Amendment to the Constitution of the United States.[2] The Act of 1956 is an extension of the police power on the same subject. If the State may regulate the practice of optometry, as it may; and if it may regulate the manufacture and sale of ophthalmic glasses, an inevitable sequence of optometry, which, of course, it may also do; and if the fitting of those

---

[2] *Harris v. State Board of Optometrical Examiners*, 287 Pa. 531; *Neill et al. v. Gimbel Brothers, Inc.*, 330 Pa. 213.

glasses into suitable frames is part of the operation of preparing glasses to make them usable—it is inescapable that the State may regulate the manufacture and sale of frames, mountings, lenses, etc. used for ophthalmic purposes. Having conceded that much, it follows that insofar as advertising may have a direct bearing on the quality of lenses, frames, mountings, etc., the State may regulate *that* also.

All those who have had any experience with eyeglasses, and, after a certain age has been reached, that number embraces the vast majority of the educated citizens of the State, know that an improper fitting or frame to glasses can destroy the therapeutic value of the prescribed lenses. Glasses which do not obey the axis prescribed by the optometrist or which tilt at an inaccurate angle can do as much damage to the wearer as striking one's eye against a door. It must be assumed that the Legislature had in mind these possibilities when it enacted legislation on the subject of eyeglasses. The grinding of lenses requires a steady hand, an accurate eye and unflagging attention. The naked unground glass which is applied to the emery wheel must be of the highest quality. The combination of excellent material and superb skill can be and is costly. It is, therefore, not conducive to optical health that artisans preparing lenses for the public should be required to stay within unwholesome restrictions in order to meet certain cost standards which are set so that the owner of the business may undersell competitors who do not employ advertising. To fit inferior lenses to an already weakened or bruised organ of sight is like supporting a cripple with papier-maché crutches.

It is not for us to pass on the motivations of the Legislature, but it is not contrary to logic to assume that the Legislature concluded that the welfare of the people would be well served by removing from dealers

the temptation to sell to the public, eye-damaging glasses in order to adhere to an arbitrarily established reduced budget. In doing this, the Pennsylvania legislature did not enter into an untrodden field of State regulation. Many other States have felt called upon to restrain merchants in the exercise of their natural inclination to proclaim what they regarded as the excellence of their commodities, where the eyesight of the citizens of the State was involved. Thus, the Supreme Court of Louisiana, passing on a question similar to the one before us in this litigation, said in the case of *State v. Rones*, 223 La. 839, 67 So. 2d 99: "The Courts of other states have had occasion to consider the validity of statutes regulating the advertising by retail dealers of eyeglasses. . . . We are in accord with the views of those upholding such statutes. These courts have decided that the statutes are a reasonable exercise of the police power because they prevent 'bait advertising' which attracts the unwary to purchase inferior glasses; eliminate the temptation to, and the pressure upon, customers that result from the assurance that no more than a named price will be charged; protect an uncautious and unwary public from being misled and deceived; prevent the increase in sales and the incidental harm that come from unfitted eyeglasses; eliminate to some extent poor quality and poor workmanship which naturally result from the desire to sell spectacles in quantity at a low advertised price for the purpose of underselling competitors."

The Supreme Judicial Court of Massachusetts passed on the same issue in the case of *Commonwealth v. Ferris*, 25 N.E. 2d 378 where it said: "The Legislature evidently was not prepared to prohibit the sale of eyeglasses and lenses as merchandise, to be selected by the buyer. But it was prepared to discourage it, by eliminating the temptation to and pressure upon

customers that result from the assurance that no more than a named price will be charged, or that the price is less than competitors ask. As in Roschen v. Ward, supra, that shorter step is consistent with the Constitution. It is not unlike the prohibition of the sale of drugs or medicinal compounds by itinerant vendors, sustained in Baccus v. Louisiana, 232 U. S. 334, 34 S. Ct. 439, 58 L. Ed. 627. There may well be reasons of public policy requiring the prohibition of advertising to sell merchandise, the actual sale of which is not forbidden . . ."

And then the Supreme Court of the United States upheld the constitutionality of a statute passed by the Oklahoma legislature which is similar to ours and indeed even contains severer restrictions. In that case, *Williamson et al. v. Lee Optical of Oklahoma et al.,* 348 U. S. 483, the Supreme Court said: "An eyeglass frame, considered in isolation, is only a piece of merchandise. But an eyeglass frame is not used in isolation, as Judge MURRAH said in dissent below; it is used with lenses; and lenses, pertaining as they do to the human eye, enter the field of health. Therefore, the legislature might conclude that to regulate one effectively it would have to regulate the other. *Or it might conclude that both the sellers of frames and the sellers of lenses were in a business where advertising should be limited or even abolished in the public interest.* Semler v. Dental Examiners, supra (294 U. S. 608). The advertiser of frames may be using his ads to bring in customers who will buy lenses. If the advertisement of lenses is to be abolished or controlled, the advertising of frames must come under the same restraints; or so the legislature might think. We see no constitutional reason why a State may not treat all who deal with the human eye as members of a profession who should use no merchandising methods for obtaining customers." (Emphasis supplied)

The Supreme Court of Appeals of Virginia held in *Ritholz v. Commonwealth*, 184 Va. 339, 35 S.E. 2d 210, that "the better reasoned cases hold that restrictions and regulations of the sale of eyeglasses are measures directed to the prevention of substantial harm to the public health and are within the exercise of the police power of the State."

And our own neighboring state of Ohio declared in the case of *Springfield v. Hurst*, 144 Ohio St. 49, 56 N.E. 2d 185, that: "An ordinance which prohibits advertising the price of lenses or complete eyeglasses is reasonable and valid exercise of police power."

The plaintiff seeks also to have us decide the Act of 1956 unconstitutional on the ground that it offends against Article III, section 3 of the Constitution of Pennsylvania which prohibits the passage of bills containing "more than one subject, which shall be clearly expressed in its title." The plaintiff argues that since the Act of 1917 was an Act regulating the practice of "optometry" only, the addition to that Act, by amendment, of a provision prohibiting price advertising by *any* person, firm or corporation engaged in or connected with the retail sale or dispensing of frames, mountings, lenses spectacles or eyeglasses, introduced into the Act a new subject. But it did not introduce a new subject. Although the plaintiff does not qualify as an optometrist he deals in prosthetics to the eyes. An optician scanning the titles of statutes for legislation pertaining to his business could not help but stop to study a statute whose title carries the language: "regulating the advertising of products used for ophthalmic purposes, and providing penalties for violation thereof." Webster's New International Dictionary defines *ophthalmic* as "of, pertaining to, or in the region of the eye; ocular."

In *Commonwealth v. Liveright*, 308 Pa. 35, 82, we said: "Moreover, unless a substantive matter entirely disconnected with the named legislation, is included within the bill, the act will not be declared in violation of the Constitution as offending Section 3 of Article III." Certainly it cannot be said, with reason, that selling eyeglasses and all their appurtenances is disconnected from the subject of "ophthalmic purposes."

The Act of 1917 and its amendments have but one object: the safeguarding of vision through the use of mechanical devices. In *Poor District Case No. 1*, 329 Pa. 390, 399, we said: "It is contended that this provision is violated because the act does not provide merely for the poor but covers this subject as well as a number of others, namely, the care of children, deaf and dumb or blind persons, mental and other patients without regard to indigence or dependency. This argument is based on a forced construction of language perfectly plain in its context. *There is no violation of this clause when various subjects are connected with and germane to the one general object of the legislation. Plurality of subjects is not objectionable so long as they are reasonably germane to each other*: Mallinger v. Pittsburgh, 316 Pa. 257, 261. *Only when its subjects are dissimilar is a law to be stricken down:* Booth & Flinn, Ltd. v. Miller, 237 Pa. 297, 303. An examination of the body of the act indicates that it has but one subject and one purpose only. It provides for indigents needing institutional care." (Emphasis supplied)

The constitutional prohibition banning two subjects in the same law is intended to protect the person who, looking for a certain subject in the statute books, could easily miss the sought-for legislation because the title fails to give an accurate index of the contents of the statute. As we said in *Mallinger v. Pittsburgh*, 316

Pa. 257, 261: "The constitutional provision (article III, section 3) . . . was intended merely to prohibit the practice of passing what were known as 'omnibus' bills, containing subjects foreign to each other, and whose title was on that account calculated to mislead and deceive; and a bill may still contain any number of provisions properly connected with and germane to the expressed subject, without violating the constitutional requirements . . ."

The amendment of 1956 is indubitably germane to the original Act of 1917, and promotes but a single objective, the protection of the eyesight of the public. Thus it cannot be said to have introduced a new subject in violation of constitutional prohibition.

Decree affirmed, each party to bear own costs.

Mr. Justice COHEN took no part in the consideration or decision of this case.