

# THE ATTORNEY GENERAL

## OF TEXAS

**AUSTIN, TEXAS 78711**

CRAWFORD C. MARTIN
ATTORNEY GENERAL

December 29, 1971

Hon. Jack Burton, O.D.                Opinion No. M- 1029
Chairman
Texas Optometry Board          Re:   Construction of Article
603 West 13th Street                 4552-5.09, Vernon's Civil
Austin, Texas  78701                 Statutes (the Texas Optometry
                                     Act), relating to price adver-
Dear Dr. Burton:                     tising by optometrists.

     Your recent letter requesting the opinion of this
office concerning the referenced matter states as follows:

> "The Texas Optometry Board respectfully
> submits the attached Board Interpretation of
> Section 5.09 of the Texas Optometry Act for
> an Attorney General's Opinion as to its
> validity."

     Attached to your letter, and styled "Board Interpre-
tation Number Six", is the following:

> "It is the interpretation of this Board
> that the Texas Legislature by the enactment of
> Section 5.09 of the Texas Optometry Law pro-
> hibits price advertising by an optometrist
> whether it be specific or fixed prices or by
> phrase or slogan such as 'economical price',
> 'one low price', 'popular price' or any other
> terms or phrases making reference to price."

     Article 4552-5.09, Vernon's Civil Statutes, which is
the portion of the Texas Optometry Act at issue in your request,
provides as follows:

> "(a)  <u>No optometrist shall publish or dis-
> play</u>, or knowingly cause or permit to be published
> or displayed by newspaper, radio, television,

-5018-

window display, poster, sign, billboard, or any other advertising media, <u>any statement or advertisement of any price offered or charged by him</u> for any ophthalmic services or materials, or any statement or advertisement concerning ophthalmic lenses, frames, eyeglasses, spectacles, or parts thereof which is fraudulent, deceitful, misleading or which in any manner whatsoever tends to create a misleading impression, including statements or advertisements of bait, discount, premiums, gifts, or any statements or advertisements of a similar nature, import, or meaning.

"(b)  This section shall not operate to prohibit optometrists who also own, operate, or manage a dispensing opticianry from advertising in any manner permitted under any section of this bill so long as such advertising is done in the name of the dispensing opticianry and not in the name of the optometrist in his professional capacity."  (Emphasis added)

The basic issue involved in your request is whether Subsection (a) of Section 5.09, supra, prohibits any and all price advertising by an optometrist, or whether that Section only prohibits price advertising which is fraudulent, deceitful, or misleading.

Through your Board Interpretation Number Six, quoted supra, your Board has indicated that it adheres to the former construction of Section 5.09.

The interpretation of Section 5.09 rendered by your Board is entitled to great weight, as

"The courts will ordinarily adopt and uphold a construction placed on a statute by an executive officer or department charged with its administration, if the statute is ambiguous or uncertain, and if the construction so given it is reasonable.  In other words, the judiciary will adhere to an executive or departmental construction of an ambiguous statute

unless it is clearly erroneous or unsound, or
unless it will result in serious hardship or
injustice, though the court might otherwise
have been inclined to place a different con-
struction on the act.

"The rule above stated is particularly
applicable to an administrative construction
of long standing, where valuable interests or
rights have been acquired or contracts have
been made, or where a law that has been uni-
formly construed by those charged with its
enforcement has been reenacted without a change
of language. . . ." 53 Tex.Jur.2d 259-62, Statutes,
Sec. 177.

See also Armco Steel Corp. v. Texas Employment Com'n.
386 S.W.2d 894 (Tex.Civ.App. 1965, error ref. n.r.e.); United
States v. 525 Company, 342 F2d 759 (5th Cir. 1965).

It is helpful to examine the background and legislative
history of Article 4552-5.09 in order to ascertain whether the
Legislature, in enacting that Article in 1969, intended to effect
a change in the prior law concerning price advertising by optom-
etrists. The precursor of Article 4552-5.09 was Article 4565g,
enacted in 1957, which provided in part, as follows:

". . . It shall be unlawful for any person,
firm or corporation in this state . . . to publish
. . . any statement or advertisement concerning
ophthalmic lenses, frames, eyeglasses, spectacles,
or parts thereof which is fraudulent, deceitful,
misleading, or which in any manner whatsoever tends
to create a misleading impression, including state-
ments or advertisements of bait, discount, premiums,
price, gifts, or any statements or advertisements of
a similar nature, import or meaning . . . "

Shortly after the enactment of Article 4565g, supra,
the Supreme Court of Texas had occasion to construe the meaning
of the above-quoted provisions in the case of Shannon v. Rogers,

159 Tex. 29, 314 S.W.2d 810 (1958), and held that Article 4565g prohibited only <u>misleading</u> price advertising.  In so holding, the Supreme Court stated:

> "In this behalf, it is the opinion of the Court that the Act must be construed as prohibiting only such price advertising as is misleading.  Such is clearly the sense of those more general words of the Act immediately preceding the clause, 'including . . . advertisements of . . . price . . . '; and this clause, it is believed, being subordinate to the general language, is at least reasonably susceptible of the construction of merely mentioning, for greater certainty, certain particular aspects of advertising, which, if misleading, would fall within the scope of the general language.  This interpretation is felt to be strongly supported by the language of the caption, which clearly refers only to statements that are misleading, and, where interpretation is required, may properly be looked to as evidence of the legislative intent.  The interpretation is believed to be supported also by the consideration that, had the legislature intended such a drastic prohibition as one against all price advertising, it would normally have used language more positively evidencing its intent. . . ."  159 Tex. at 46-37, 314 S. W.2d at 815-16.

An analysis of Section 5.09, bearing in mind the wording of Article 4565g and the reasoning of the <u>Shannon</u> case, supra, indicates that the Legislature intended that the Section was to make at least three distinct prohibitions:  (1)  the prohibition of an optometrist's publishing or displaying any statement or advertisement of any price offered or charged by him for any ophthalmic services or materials;  (2)  the prohibition of an optometrist's making any statement or advertisement concerning ophthalmic lenses, or materials of like ilk, which is fraudulent, deceitful, or misleading; and (3)  the prohibition of an optometrist's making any statement or advertisement which tends to create a misleading impression, including statements of bait, discounts, premiums, gifts, et cetera.

We, therefore, hold that the Legislature, in enacting Section 5.09 and changing its language concerning price advertising from that found in Article 4565g, supra, intended to prohibit <u>all</u> price advertising by an optometrist, and that the Legislature did not intend that only misleading price advertising was to be circumscribed by the scope of Section 5.09.

In support of this holding, we are mindful of your Board's interpretation of Section 5.09 for the past two years. We must presume that the Legislature, with that interpretation before it, failed to change it at the 1971 legislative session and thus is in accord with your construction. Your interpretation, as pointed out hereinabove, is entitled to great weight, and our courts will not set the same aside unless it is clearly erroneous or unsound or results in serious hardship or injustice, none of which appears.

Our holding is also supported when Article 774, Texas Penal Code, is read in consonance with Section 5.09. That Article, relating to the prohibition directed against members of various professions soliciting patronage (including optometrists), provides as follows:

"The preceding Article shall not be construed to prohibit the inserting in a newspaper of any advertisement of such person's business, profession and place of business, or from advertising by handbills and paying for services in distributing same."

It is apposite to note that Article 774 makes no mention of, nor does it sanction, price advertising.

The highest courts of our sister states have construed similar statutes regulating price advertising by optometrists, and have held that such statutes prohibited all price advertising whether such prices are advertised in fixed amounts, or by such terms as "economical price", "one low price", "popular prices", or other terms of similar import. See, e.g., <u>Donahue v. Andrews</u>, 47 P.2d 940 (Ore.Sup. 1935); <u>Bedno v. Fast</u>, 95 N. W. 2d 396 (Wis. Sup.), <u>cert. denied</u>, 360 U.S. 931 (1959); <u>Michon v. Louisiana State Board of Optometry Examiners</u>, 121 So.2d 565 (La.Sup. 1960); <u>Akin v.</u>

Louisiana State Board of Optometry Examiners, 150 So.2d 807
(La.Sup. 1963); Louisiana State Board of Optometry Examiners
v. Pearle Optical of Alexandria, 177 So.2d 164 (La.Sup. 1965).

It is, of course, manifest that a state legislature
may constitutionally regulate advertising by a professional
group, and especially one in the field of public health. Kee
v. Baber, 157 Tex. 387, 303 S.W.2d 376 (1957). Abelson's Inc.
v. New Jersey State Board of Optometry, 75 A.2d 867 (N.J.Sup.
1950); Semlar v. Oregon State Board, 294 U.S. 608 (1935); Head
v. New Mexico Board of Examiners in Optometry, 374 U.S. 424
(1963); Ritholz v. Indiana State Board of Registration & Exami-
nation, 45 F.Supp. 423 (D.Ind. 1937); Melton v. Carter, 164
S.W.2d 453 (Ark.Sup. 1942); Baikin v. The Board of Optometry,
75 Cal.Rptr. 337 (Cal.Sup. 1969); Economy Optical Co. v. Kentucky
Board of Optometric Examiners, 310 S.W.2d 783 (Ky.Sup. 1958);
State v. Rones, 67 So2d 99 (La.Sup. 1953); Commonwealth v. Ferris,
25 N.E.2d 378 (Mass. Sup. 1940); Seifert v. Buhl Optical Co., 268
N.W. 784 (Mich.Sup. 1936); New Mexico Board of Examiners in Optom-
etry v. Roberts, 370 P.2d 811 (N.M.Sup. 1962); Finlay Strauss, Inc.
v. University of State of New York, 62 N.Y.S,2d 892 (N.Y.App.Div.
1946); Springfield v. Hurst, 56 N.E.2d 185 (Ohio Sup. 1944); Ullom
v. Boehm, 142 A.2d 19 (Pa.Sup. 1958); Ritholz v. Commonwealth, 35
S.E.2d 210 (Va.Sup. 1945); Ritholz v. Johnson, 17 S.W.2d 590
(Wis.Sup. 1945); Patterson Drug Company v. Kingery, 305 F.Supp.
820 (W.D.Va. 1969).

In view of the foregoing, you are advised that Section
5.09 of the Texas Optometry Act prohibits all price advertising
by an optometrist, without regard to whether such price adver-
tising is misleading, and that the Section also prohibits price
advertising by means of non-specific or non-fixed slogans such as
"economical price", "one low price", "popular prices", or other
terms of similar import.

## S U M M A R Y

Article 4552-5.09, Vernon's Civil Statutes
(the Texas Optometry Act), prohibits all price
advertising by optometrists, regardless of whether

such price advertising is misleading, and also
prohibits the advertising of prices by such non-
specific slogans such as "economical price",
"one low price", "popular prices", or other terms
of similar import.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Austin C. Bray, Jr.
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

Robert Giddings
John Banks
Bob Gauss
Bob Lattimore

SAM McDANIEL
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant

-5024-