Nathaniel W. Boyd, III, D.O., Appellant, *v.*
Commonwealth of Pennsylvania, State
Board of Osteopathic Examiners,
Appellee.

Argued December 4, 1973, before Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. President Judge BOWMAN did not participate.

*Daniel W. Shoemaker,* with him *John W. Thompson, Jr.* and *Shoemaker & Thompson,* for appellant.

*Lawrence Alexander,* Assistant Attorney General, with him *Israel Packel,* Attorney General, for appellee.

OPINION BY JUDGE BLATT, March 27, 1974:

The State Board of Osteopathic Examiners (Board) suspended the license issued to Nathaniel W. Boyd, III, D.O. (appellant) to engage in the practice of osteopathy and surgery for a period of six (6) months. The suspension was based on his alleged violation of Section 14 of the Act of March 19, 1909, P. L. 46, *as amended,* 63 P.S. §271 (Osteopathic Law) and Section 9 of the Rules and Regulations of the Board.[1] The Act provides in part: "The State Board of Osteopathic Examiners may refuse, revoke or suspend the right to practice osteopathy and surgery in this State upon any or all of the following reasons, to wit: . . . the violation of the practice of osteopathy and surgery as defined in this act; misrepresentation; unethical conduct; or misleading, fraudulent or unethical advertising, including any form of pretense which might induce citizens to become a prey to professional exploitation: . . ."

The Board's adjudication quotes certain subsections of Regulation 9 of its Rules and Regulations which the Board considers relevant.[2] The "relevant portions" are as follows:

---

[1] These rules, effectuated on September 30, 1964, were revised on October 9, 1969 but remain substantially unchanged. *See* 49 Pa. Code, §25.61 et seq.

[2] We note that the final order did not specify which set of facts violated which specific subsections. Although we were able to re-

"It shall be considered unethical for an osteopathic physician to engage in the following course or courses of action:

"9.1. Inviting the attention of persons afflicted with particular or specific diseases.

"9.2. Publishing reports of cases in the daily press, on television, or other nonprofessional mass communication media.

"9.3. Presenting cases or reports of cases over the radio, television, or other nonprofessional mass communication media.

"9.5. Advertising professional services or soliciting of patients via newspapers, radio or television.

"9.7. Use of any public listing of specific diseases treated, methods used, or equipment possessed.

"9.12. To fail to designate or indicate by the term 'D.O.,' or 'Doctor of Osteopathy,' 'Osteopathic Physician,' 'Osteopathic Physician and Surgeon,' or some similar and definitive term indicating his school of practice in the professional use of his name.

"9.14. To engage in any other course of conduct resulting in a violation of the physician's duty to his patients and community at large as expressed in the Osteopathic Law of March 19, 1909, P. L. 46, and its amendments.

"It may be considered ethical to use in printed publication a simple dignified statement by a general practitioner which statement shall list only the name, profession, address, telephone number, office hours, and other necessary information. The listing of organs or a statement of the class of cases treated may be made by a physician who limits his practice to a specialty

view the order properly without such specificity and were able to see which facts fitted which violation, we believe that a more exacting adjudication could have alleviated some of the appellant's uneasiness about its alleged arbitrariness.

only, however, the listing of specific diseases shall not be made."

The findings of fact upon which the Board based its conclusion indicate that (1) Boyd caused booklets to be sent through the mails which described treatments for hernia, rectal disorders and prostate gland enlargement and which contained pictures of his Clinic and advertisements for it; (2) Boyd caused advertisements for the treatment of prostate troubles and ruptures to be inserted in the Harrisburg Evening News; (3) Boyd paid for the newspaper advertisements by check; (4) Boyd's name, address and a picture of his Clinic appeared in the booklets received through the mails which advertised symptoms and treatment for hernia, ruptures, rectal disorders and varicose veins; and (5) those who answered the box number in the newspaper advertisement received Boyd's name and address on the booklets.

We must affirm the Board's adjudication, which we believe to be both in accordance with the law and supported by substantial evidence.

Recognizing that we are dealing with a penal statute which must be strictly construed, *State Board of Osteopathic Examiners of Pennsylvania v. Berberian,* 200 Pa. Superior Ct. 533, 190 A. 2d 330 (1963), we find, nonetheless that there is clearly adequate evidence upon which a reasonable man could base the conclusion that Boyd engaged in prohibited activities and that the findings of fact are sufficiently specific to enable an appellate court to review the Board action.[3]  *A. P. Weaver & Sons v. Sanitary Water Board,* 3 Pa. Commonwealth Ct. 499, 284 A. 2d 515 (1971).  *D'Anjolell v. State Board of Funeral Directors,* 3 Pa. Common-

---

[3] Contrary to the appellant's assertion, the Board did set forth in the facts the advertised body conditions, which it apparently considered to be "particular or specific diseases," thus substantiating a violation of Regulation 9.1.

wealth Ct. 64, 280 A. 2d 123 (1971). The facts clearly establish that Boyd violated the regulations of his profession concerning unethical advertising.

The appellant contends that the actions of the Board were arbitrary and capricious, asserting that the Board refused to address itself to his charge that it was biased against him and prejudicially composed. His claim is based on the fact that three of the current Board members sat on the Board in 1967 when he was suspended for similar violations.[4] In support of his position the appellant cites the case of *State Board of Chiropractic Examiners v. Hobson,* 71 Dauph. 234 (1958), where, pursuant to affidavits made a part of the record, the court remanded the case to the Board to "free itself from any suspicion" of prejudice which might exist because the chairman of the Board was married to the appellant's former wife. Not only is *Hobson, supra,* distinguishable factually and procedurally but, the case at hand does not present a situation where a judicial or quasi-judicial officer has a direct, personal or substantial pecuniary interest in the outcome of the controversy. *See Tumey v. Ohio,* 273 U.S. 510 (1926).

In regard to the Board's composition Boyd further claims that it was comprised of seven osteopathic physicians rather than of five osteopaths and two medical doctors as required by the Act of April 9, 1929, P. L. 177, *as amended,* 71 P.S. §126. As the appellee pointed out and as was verified by affidavit, however, the Board actually was properly composed, but a stenographic error improperly labelled two of the adjudicating medical doctors as "O.D.'s" on a published list of Board members. It is clear that a clerical error which

---

[4] On that suspension, the parties stipulated that Boyd's appeal be sustained without prejudice to the Board to proceed against him if it deemed further action necessary.

does not prejudicially affect a complainant can not be the basis of a reversible error. *Sharp's Convalescent Home v. Department of Public Welfare,* 7 Pa. Commonwealth Ct. 623, 300 A. 2d 909 (1973). And it is equally clear here that the clerical error did not change the fact the composition of the Board met all legal requirements.

Another basis for Boyd's allegation of arbitrary action on the part of the Board is his claim that the six month suspension ordered was an unduly harsh penalty. We find no abuse of discretion or illegality in the Board's imposition of this penalty nor can we substitute our own judgment for that of the Board's where, as here, the penalty is reasonable. *Compare, The Carver House, Inc. v. Liquor Control Board,* 3 Pa. Commonwealth Ct. 453, 281 A. 2d 473 (1971), *with Benford v. Real Estate Commission,* 8 Pa. Commonwealth Ct. 89, 300 A. 2d 922 (1973).

The remaining allegations raised by Boyd concern constitutional infirmities which we find without merit. The Legislature has authorized the Board to "make and adopt all necessary rules, regulations, and by-laws . . . to perform the duties and transact the business required under the provisions of this act." Section 3 of the Administrative Code Ancillaries, Act of March 19, 1909, P. L. 46, *as amended,* 71 P.S. §1141.[5]

Regulation 9 appropriately describes the conduct prohibited by Section 14 of the Osteopathic Law in regard to advertising.[6] Not only has the appellant failed

---

[5] Portions of this section, none of which are material to this case, were repealed insofar as they were inconsistent with the Administrative Code of 1923, Act of June 7, 1923, P. L. 498, 71 P.S. §31.

[6] Unlike *Berberian, supra,* where the court construed "unethical conduct" as used in the statute to be limited to the doctor- patient relationship, these Rules properly described the broader term of "unethical advertising" which necessarily refers to the relationship between the osteopathic physician and the public.

to satisfy his burden of proving that the Legislature had unconstitutionally delegated its powers, as required by *Pennsylvania Crime Commission v. Nacrelli*, 5 Pa. Commonwealth Ct. 551 (1972), but on the contrary, the regulations provide a protection for the appellant by satisfying the constitutional requirement of supplying "notice and clear description of what is prohibited conduct." *Pennsylvania State Board of Pharmacy v. Cohen*, 448 Pa. 189, 199, 292 A. 2d 277, 282 (1972).

Most importantly, the regulations are substantially valid, being within the police power of the State and when, as in this case, the Commonwealth has satisfied its burden of proving that a violation has occurred, it is clear that reasonable punishments may be imposed by the Board. Our Supreme Court has held that advertising may be limited or abolished in the public interest without offending Constitutional protections, as it was in *Ullom v. Boehm*, 392 Pa. 643, 142 A. 2d 19 (1958), where the advertising of prices by retailers for frames, mountings, lenses, spectacles or eyeglasses used for opthalmic purposes was prohibited. Although a statute which prohibited the advertisement of dangerous drugs was found to be unconstitutional in *Pennsylvania State Board of Pharmacy v. Pastor*, 441 Pa. 186, 272 A. 2d 487 (1971), we are guided by the test used in that case requiring that "a law which purports to be an exercise of the police power must not be unreasonable, unduly oppressive or patently beyond the necessities of the case, and the means which it employs must have a real and substantial relation to the objects sought to be attained." 441 Pa. at 191, 272 A. 2d at 491. The advertising regulations here concerned for osteopathic physicians evenhandedly and reasonably relate to the stated object of preventing the inducement of "citizens to become a prey to professional exploitation." Section 14 of the Osteopathic Law, 63 P.S. §271.

We likewise have found no procedural irregularities or violations of due process in the Board's actions. We, therefore, enter the following

ORDER

Now, March 27, 1974, the order of the State Board of Osteopathic Examiners is hereby affirmed, suspending for six (6) months the license of Nathaniel W. Boyd, III, D.O., to engage in the practice of osteopathy and surgery.