HAMLIN, Justice.
John H. Michell, a qualified and duly licensed optometrist in Louisiana, instituted the present declaratory judgment proceeding. He alleged that because his employer, Pearle Optical, Inc., was not the holder of a Louisiana optometrist’s license, he was threatened with the imminent loss of his right to practice his profession as an employee of Pearle Optical, Inc., and that he was adversely affected by the following rule and regulation of the Louisiana State Board of Optometry Examiners (Hereinafter designated as Board):
“* * * THEREFORE, the Board has unanimously adopted the following rule and regulation for the purpose of administering the provisions of R.S. 37:1041, et seq.:
“a) An Optometrist, duly licensed under the provisions of the Louisiana *458 Optometry Law as set forth in LSA-R.S. 37:1041, et seq., is prohibited from accepting employment as an Optometrist from a corporation.
“b) An Optometrist, duly licensed under the provisions of the Louisiana Optometry Law as set forth in LSA-R.S. 37:1041, et seq., is prohibited from accepting employment as an Optometrist from a partnership composed of persons other than duly licensed optometrists.
“Optometrists so employed (a & b) shall be considered in violation of the provisions of R.S. 37:1061,. and as such subj ect to refusal by the Board to renewal of his or her Optometry License on its annual renewal date— March 1st of each year (R.S. 37:1056) and/or subject to suspension or revocation of his certificate to practice upon due notice and hearing as provided in R.S. 37:1062.”[1]
Plaintiff prayed, (1) that the rule and regulation, supra, be declared ultra vires of the Board’s powers; (2) that it be declared contrary to the applicable provisions of law and therefore unlawful, null, and void; (3) that the Board be decreed to be without power or authority to issue the rule and regulation; or, alternatively, (1) that those parts of LSA-R.S. 37:1041-65 which empowered the Board to issue the rule and regulation be declared unconstitutional, null and void; or alternatively (2) that the entire Optometry Act, LSA-R.S. 37:1041-65, be declared unconstitutional, null and void.
In an amending and supplemental petition, plaintiff alleged that the Optometry Act, particularly LSA-R.S. 37:1042, was unconstitutional, null, and void under the Fourteenth Amendment to the United States Constitution and Articles I and II of the Louisiana Constitution of 1921, in that the Act establishes a board with power to regulate plaintiff’s business and in effect delegates to the members of a private, nonofficial and non-political association or organization, namely the Louisiana State Association of Optometrists, the power to name the members of the Board through exclusive recommendation to the Governor of Louisiana who is bound to select members of the Board from said recommendations, thus depriving plaintiff of his property without due process and depriving him of equal protection of the laws.
The trial court rendered judgment in favor of plaintiff, decreeing that the rule and resolution complained of by plaintiff was ultra vires of the Board’s legal authority and was illegal, null, and void. It stated:
“Inasmuch as the Legislature has merely entrusted to the Board the power of administering the Act, and nothing more, and this in unmistakable language, there is no room for the argument that the Board, in adopting the contested rule or regulation, was exercising a delegated power. The inevitable conclusion is that the resolution of January 27, 1959 is ultra vires.” [2]
The Court of Appeal (146 So.2d 863) reversed the judgment of the district court and rendered judgment in favor of the Board, recognizing the “January 27, 1959” regulations as proper and in keeping with the provisions of the Optometry Act. The Court found that Dr. Michell’s constitutional challenges were without merit.
In the exercise of our supervisory jurisdiction (Art. VII, Sec. 11, LSA-Const. of *459 1921) we directed certiorari to the Court of Appeal, Third Circuit, 243 La. 1019, 149 So.2d 768, primarily to review its holding that the rule and regulation under attack was not ultra vires of the Board’s powers. Herein, plaintiff sets forth the following assignment of errors:
“1. The Court of Appeal erred in overruling the district court’s judgment that the Board’s rule was illegal, null and void and ultra vires. The Court of Appeal erred specifically in finding that R.S. 37:1061 prohibits optometrists from accepting employment from a corporation to practice optometry.
“2. The Court of Appeal, and the district court, erred in holding R.S. 37 :- 1042 constitutional despite its delegation of the executive power of the Governor to a private individual.
“3. The Court of Appeal, and the district court, erred in holding the whole optometry act constitutional despite its general delegation of legislative power to the Board, despite its unreasonable and arbitrary regulation of a lawful calling.
“4. The Court of Appeal erred in applying this new ruling and interpretation of the optometry act to the preexisting business and relationships of plaintiff, others situated like him, and plaintiff’s employer.”
The Board contends that if an individual is illegally practicing optometry, the Board has a duty imposed upon it to stop such illegal practice. It argues that if a licensed optometrist is making the illegal practice possible, the activities must be halted within the frame-work of the optometry law. It states that the sole purpose of the resolution in question was to administratively advise licensed optometrists of the prohibitions against corporate practice as contained in the optometry law, and that the resolution contains no expansion of the legislative mandate, nor is it an attempt by the Board to itself legislate.
The facts in the instant matter are simple'. Plaintiff’s employer is Pearle Optical, Inc., in which the majority stockholder is Dr. Stanley Pearle, an optometrist licensed to practice in Texas and Pennsylvania. This Company employs licensed optometrists and establishes locations in which they shall practice. In plaintiff’s case, it furnishes a great part of his instruments or equipment; his quarters are in Gordon’s Jewelry Store in Baton Rouge; he receives a fixed salary, plus commission, and he has nothing to do with the financial arrangements or operations of the Company.
Piaintiff admits that he works for a corporation; he contends, however, that the corporation does not practice optometry. In brief he states:
“The record as a whole clearly shows that the corporation as such never practiced optometry. On the contrary, that is exactly why it hired this plaintiff, a licensed optometrist. The corporation cannot practice optometry, so it has hired plaintiff to do that as an overall part of the corporation’s business structure.” [3]
“The legislature in the exercise of the police power and for the protection of the public health and welfare may control and regulate the practice of optometry, and a state board of optometry can adopt no rules and regulations which are inconsistent with the express provisions of a statute. * * *
“Ordinarily, the primary purpose of statutes regulating the practice of optometry is to protect the public health and safety, and not to put any special restrictions on persons practicing optometry, or to create a monopoly for, confer any special privileges on, or protect the interests of, such persons, ex *460 cept in so far as their advancement in skill and efficiency serves the primary purpose of the law. Nevertheless, some legislation dealing with the practice of optometry is designed not only for the protection of the public health and welfare, but also the protection of the rights and interests of those lawfully engaged in that calling or profession.
“Statutes relating to the practice of optometry must be construed in the light of the purposes of their enactment. An optometry statute which abridges and regulates existent rights must be strictly construed, and should not be extended by judicial interpretation beyond the clear intent of the legislature as discovered in the statute itself. * * * ” 70 C.J.S. Physicians and Surgeons § 3, pp. 823-825. See, State v. Rones, 223 La. 839, 67 So.2d 99.
The Louisiana Optometry Act, as set forth -in the Revised Statutes, provides that the Louisiana State Board of Optometry Examiners may promulgate and publish rules and regulations for the purpose of administering the provisions of this Chapter (Chapter 12, LSA-R.S. 37:1041-65). LSA-R.S. 37:1048(2). In LSA-R.S. 37:-1049, the qualifications and .requirements of applicants are specified as follows:
“All persons desiring to practice optometry shall:
“(1) Be citizens of the United States, of good moral character;
“(2) Have graduated from an approved high school or school maintaining a similar standard;
“(3) Have graduated from a school or college of optometry approved by the board;
“(4) File with the secretary of the board upon the form furnished an application under oath stating that he fulfills each requirement of this Section and include with the application the papers required by R.S. 37:1050; and
“(5) Pass the examination required by R.S. 37:1051.”
In LSA-R.S. 37:1041(3), in defining “Optometry” it is stated that “Optometry” moans that practice in which a person employs or applies any means other than the use of drugs, * * *; LSA-R.S. 37:-1051 sets forth the subjects on which the examination must be based; LSA-R.S. 37:1052 states that if the applicant successfully passes the examination * * * he shall receive from the Board a certificate entitling him to practice optometry in this State.
In reading the above statutory provisions it is self-evident that a corporation or artificial being could not meet the requirements recited, and that the Optometry Act by its very language contemplated within its bounds natural persons and not a corporate group of individuals existing by permission of law.
The causes for refusal of, suspension, or revocation of a certificate to practice optometry are set forth in LSA-R.S. 37:1061. In Sub-section (6) it is stated that the Board may refuse to issue or renew, or may suspend or revoke any certificate to a practitioner for “[hjaving professional connection with or lending his name to an illegal practitioner.” Sub-section (13) provides the same treatment to a practitioner for “[permitting another to use his certificate of registration.”
“Legislation must often be adapted to complex conditions involving a host of details with which the legislature cannot deal directly, and certainly the legislature cannot deal with the details of each particular case that may arise in the administration of an act. The legislative process would frequently bog down -if the legislature were constitutionally required to appraise beforehand the myriad situations to which it wishes a particular policy to *461 be applied and to formulate specific rules for each situation. The legislature can only legislate so far as is reasonable and practicable and must leave to executive officers the authority to accomplish its purpose. Necessity fixes a point beyond which it is unreasonable and impracticable to compel the legislature to prescribe detailed rules for the purpose of avoiding an unconstitutional delegation of legislative power * * *
* * * * * *
“Where the legislature has laid down the fundamentals of a law, it may delegate to administrative agencies broad power to fill up the details, within prescribed limits, by the determination of facts or the enactment of rules and regulations, and it is of no constitutional significance that the administrative agency in executing legislative policies also has discretion to fashion remedies of a civil nature necessary for obtaining the desired goals. * * * ” 1 Am.Jur.2d Administrative Law Sec. Ill, p. 910.
“The legislature may delegate its authority to make findings of fact, and the fact-finding power may be conferred for putting into effect, suspending, or applying the law. * * * ” 1 Am. Jur.2d Administrative Law Sec. 12S, p. 933.
“The legislature, having declared its policy and purpose and provided standards for the exercise of the power, may confer upon administrative agencies the power to enact rules and regulations to promote the purpose and spirit of the legislation and carry it into effect, and, even though such rules and regulations are given the force and effect of law, there is no violation of the constitutional inhibition against delegation of the legislative function. A legislature or other law-making body, in enacting a law complete in itself and designed to accomplish the regulation of particular matters falling within its jurisdiction, may expressly authorize an administrative agency, within definite valid limits, to provide rules and regulations for the complete operation and enforcement of the law within its express general purpose.
“The authority to make rules to carry out a policy declared by the lawmaker or to effect its operation and enforcement is administrative and not legislative, * * *” 1 Am.Jur.2d Administrative Law Sec. 126, p. 935.
In adopting the rule and regulation under attack, the Board interpreted the Optometry Act (enacted for the public health and welfare) to the effect that an optometrist employed by a (partnership or) corporation would be violating LSA-R.S. 37:1061 by associating with an illegal practitioner. The Act does not define an illegal practitioner; it follows, however, that one who cannot meet the requirements of the statute — such as a corporation — is not a legal practitioner. As stated by the Court of Appeal, “The conclusion is further inescapable that since a corporation may not be licensed to practice optometry any professional connection with a corporation by a licensed optometrist would violate LSA-R.S. 37:1061(6).”
We conclude that the rule and regulation of the Board was administrative and not legislative. It was adopted under the rule making power of the Board; it was an exercise of vested discretion which was not performed in an arbitrary or illegal manner. The attacked rule and regulation was therefore not ultra vires of the Board’s powers.
The practice of optometry is closely related to the public health and public welfare; under its police powers, the Legislature is permitted to regulate this practice. State v. Rones, 223 La. 839, (67 So.2d 99, and authorities quoted supra. The police power of the State, which is co *462 extensive with sovereign power, denotes the power of the State to impose restraints on private rights which are for the general welfare. Plebst v. Barnwell Drilling Company, 243 La. 874, 148 So.2d 584. See, Olan Mills, Inc. of Tennessee v. City of Bogalusa, 225 La. 648, 73 So.2d 791. If plaintiff suffers any restraints under the Optometry Act, such were within the constitutional power of the Legislature to enact, there being no prohibition with respect to their adoption. ■
The Court of Appeal (146 So.2d 863) correctly answered the constitutional issues asserted by plaintiff in that Court and herein assigned as Errors Nos. 2 and 3; we see no necessity for repeating herein its rulings.
For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, is affirmed. All costs to be paid by relator, John H. Michell.

. The rule and regulation was sent to all Louisiana Registered Optometrists on January 27, 1959, the letter of transmittal stating that it was in effect. The copy of the role and regulation contained in the record bears no date.

. The trial court had previously rendered judgment dismissing plaintiff’s suit; it felt that a declaratory judgment action was not available to plaintiff since he had not exhausted his administrative remedies. The Court of Appeal remanded the matter. 128 So.2d 825.

. Plaintiff’s counsel stated in court that plaintiff’s employer would be responsible for any tortious act committed by plaintiff.