Dear Hons. Watkins and Blackall:
You have each requested the opinion of this office concerning the validity of the 2010 budget ordinance for the City of Covington, Ordinance No. 2009-29, and Mr. Blackall has also requested our interpretation of certain provisions of the Home Rule Charter for the City of Covington. We have consolidated your requests for our consideration and response.
The City of Covington ("Covington" or "City") operates pursuant to a Home Rule Charter ("Charter") adopted by referendum on November 7, 1978, and effective July 1, 1979, all in accordance with Article VI, Section 5(C) of the Louisiana Constitution. Among the provisions of the Charter is Section 5-04(D), which grants the mayor of Covington the unilateral power to transfer unencumbered appropriations to different programs within a particular department:
Transfer of appropriations: At any time during the fiscal year the mayor may transfer part or all of any unencumbered appropriation balance among programs within a department, office or agency. An unencumbered appropriation balance may be transferred from one department, office or agency to another only upon council action by ordinance.
Charter, § 5-04(D). This authority to transfer appropriations coincides with the mayor's "general executive and administrative authority over all departments, offices and agencies of the city." Charter, § 3-01. *Page 2 
On September 2, 2008 the City Council of Covington ("Council") voted to submit twenty proposed amendments to the Charter for consideration by the electors of the city, in accordance with the procedures for amending the Charter. Charter, § 7-04. Among the proposals was an amendment to Section 5-04(D) that removed the mayor's unilateral authority to make intradepartmental appropriations transfers. Charter Amendment Proposition No. 5, September 2, 2008. Specifically, the proposed amendment would have allowed the Council to limit, by ordinance, the amount of such transfers, and would have required Council approval prior to any transfers exceeding said limit:
 CHARTER AMENDMENT PROPOSITION NO. 5 *****
Shall Section 5-04(D) of the Covington Home Rule charter be amended to read as follows:
(D) Transfer of appropriations: At any time during the fiscal year the mayor may transfer such sum as fixed by City Council Ordinance annually from any expenditure account within an approved operating budget of a department, office or agency except that no such action shall increase or decrease said budget. Any transfer exceeding such sum, during any fiscal year, from any expenditure account within an approved operating budget of a department, office or agency must be approved by the council, by resolution, except that no such action shall increase or decrease said budget. An unencumbered appropriation balance may be transferred from one department, office or agency to another only upon council action by ordinance.
Id. This proposed amendment, along with 19 others, was placed on the ballot for the election held on November 4, 2008. The proposed amendment to Section 5-04(D) was rejected by the voters.
Despite the failure of the proposed Charter amendment, on November 3, 2009 the Council enacted its 2010 budget ordinance, Ordinance No. 2009-29, and included a provision that purports to limit the mayor's authority to transfer unencumbered funds within the same department, office or agency, and requires Council approval prior to any transfers exceeding a certain amount: *Page 3 
WHEREAS, within the adopted budget the Mayor may transfer amounts from $5,000 up to $15,000 from any expenditure account within an approved operating budget of a department, office, or agency, with written notification of intent and reasoning given to the Council within seven (7) days of the budget action, except that no such action shall increase or decrease said budget. Any transfer of $15,000 or more for any expenditure account within an approved operating budget of a department, office, or agency must be approved by the Council, by resolution, except that no such action shall increase or decrease the budget. Amounts noted are to be considered accumulative during the budget year. The Council, by ordinance, may modify the aforementioned dollar amount and may establish notification and justification procedures; . . .
Covington Ordinance No. 2009-29. Mayor Watkins vetoed the ordinance on November 5, 2009, explaining that the ordinance violated the Charter and that the voters had rejected a proposed Charter amendment that would have granted the Council the authority to pass the ordinance. See Veto Explanation for Ordinance 2009-29. The Council voted to override the mayor's veto on November 29, 2009, with the result that the ordinance was enacted and became the law of the City. Charter, § 2-13(C).
Article VI, Section 5 of the Louisiana Constitution empowers local municipalities to adopt a home rule charter, and specifies that such home rule charter "shall provide the structure and organization, powers, and functions of the government" of the municipality. La.Const. art. VI, § 5(E). "The Constitution gives the local governing authority complete discretion in the distribution of operations and authority in the charter." La.Atty.Gen.Op. No. 98-83, citing Lafourche Parish Council v.Autin, 94-0985 (La. 12/9/94), 648 So.2d 343 and
La.Const. art. VI, § 5(E). Courts have long recognized the fundamental constitutional principle that the authority of a municipality that has adopted a home rule charter is bound by its own charter:
Pursuant to Article VI of the Louisiana Constitution, a municipal authority governed by a home rule charter possesses powers, in affairs of local concern within its jurisdiction, that are as broad as those of the state, except when limited by the constitution, laws permitted by the constitution or its own home rule charter.
Fransen v. City of New Orleans, 2008-0076 (La. 7/1/08),988 So.2d 225, 234, citing La.Const. art. VI, §§ 4-5 andCivil Serv. Comm'n of the City of New Orleans v. The City ofNew Orleans, *Page 4 
02-1812 (La. 9/9/03), 854 So.2d 322, 326. It follows that an ordinance that violates the provisions of an applicable home rule charter is invalid ab initio. La.Atty.Gen.Op. No. 93-749, see also La.Atty.Gen.Op. No. 86-51.
Section 5-04(D) of the Charter gives the mayor the unilateral power to transfer unencumbered appropriations to different programs within a particular department, office or agency. Charter, § 5-04(D). Ordinance 2009-29 is directly contrary to Section 5-04 of the Charter insofar as it purports to limit the mayor's authority over intradepartmental transfers of unencumbered funds.
This office has previously considered this very issue in Opinion No. 09-0152, issued to the Mayor of Slidell, Louisiana. One of the questions presented in that opinion was whether the City Council of Slidell could "require its approval to make line item transfers from salaries and benefits to other operating line items within a department after the budget is adopted." La.Atty.Gen.Op. No. 09-0152. The opinion concluded that the council could not require such approval:
Per Charter Section 5-05(D), the mayor has the authority to transfer part or all of any unencumbered appropriation balance among programs within a department, office, or agency. Because the Charter expressly gives this authority to the mayor, the council cannot require its approval for these transfers.
Id. This portion of Opinion No. 09-0152 is based on the same fundamental concept cited above, namely that the authority of a municipality governed by a home rule charter is necessarily bound by the provisions of its charter.
Council President Blackall suggests in his opinion request letter that the reallocation of authority to transfer appropriations is an exercise of the special powers of the City, which, unlike the general powers of the City, are not fettered by the Charter. The special powers of the city are set forth at Section 1-06 of the Charter:
Section 1-06. Special powers.
The city shall also have the right, power and authority to exercise general police power and to this end the governing authority of the city is specially empowered to pass all ordinances requisite or necessary to promote, protect and preserve the general welfare, safety, health, peace and good order of the city, including, but not by way of limitation, the right, power *Page 5 
and authority to pass ordinances on all subject matters necessary, requisite or proper for the management of the city's affairs, and all other subject matters without exception, subject only to the limitation that the same shall not be inconsistent with the constitution or expressly denied by general law applicable to the city.
Charter, § 1-06. In order to determine whether Ordinance 2009-29 is an exercise of the special powers of the City, it is necessary to interpret Section 1-06.
In construing a home rule charter, which can be described as the constitution for the municipality, we use the same guidelines as those used in construing a statute. See Fransen v. City ofNew Orleans, 2008-0076 (La. 7/1/08),988 So.2d 225, 233, citing Cox Cable New Orleans, Inc. v. City ofNew Orleans, 624 So.2d 890, 894 n. 5 (La. 1993). The interpretation of any statute begins with the language of the statute itself. David v. Our Lady of the Lake, Inc., 02-2675 (La. 7/2/03), 849 So.2d 38, 46, citing SWAT24 Shreveport Bossier, Inc. v. Bond, 2000-1695 (La. 6/29/01),808 So.2d 294, 302.
Section 1-06 sets forth the City's "authority to exercise general police power." Charter, § 1-06. Each of the following provisions that provide the City with special authority to pass ordinances under Section 1-06 can only be exercised "to this end," and "this end" refers to the general police power. Id. The clear language of Section 1-06 limits the authority set forth therein to the City's exercise of the police power.
Section 1-05 of the Charter immediately precedes Section 1-06, and it provides for the general powers of the City. These general powers are limited by the Charter:
Section 1-05. General powers.
Except as otherwise provided by this charter the city shall continue to have all the powers, rights, privileges, immunities and authority heretofore possessed by the city under the laws of the state. The city shall have and exercise such other powers, rights, privileges, immunities, authority and functions not inconsistent with this charter as may be conferred on or granted to a local governmental subdivision by the constitution and general laws of the state, and more specifically, the city shall have and is hereby granted the right and authority to exercise any power and perform any function necessary, requisite or proper for the management of its affairs, not denied by this charter, or by general law, or inconsistent with the constitution. *Page 6 
Charter, § 1-05. Laws in pari materia must be interpreted in reference to each other. La.Civ.C. art. 17. If the special powers of Section 1-06 were interpreted to authorize the exercise of general powers, or any powers beyond the police power, then Section 1-05 would be rendered meaningless.
[S]tatutory provisions referring to a common subject are to be construed in such a fashion as to infuse them all with efficacy and meaning and in such a manner as will produce a unified and coherent import. As a general rule, the legislature does not enact vain and useless legislation. Staton v. Hutchinson, 370 So.2d 106 (La.App. 1st Cir. 1978). Judicial construction must aim to attribute reasonable meaning to an entire statutory framework and context. McGee v. Police Jury of Caddo Parish, 63 So.2d 153 (La.App. 2d Cir. 1953). Thus, statutory provisions are to be given effect wherever possible and if statutes can be reconciled by fair and reasonable interpretation this should be done. Fakier v. Picou, 166 So.2d 257 (La. 1964); Johnson v. Sewerage District No. 2 of Parish of Caddo, 120 So.2d 262 (La. 1960).
Johnston v. Morehouse Parish Police Jury,424 So.2d 1053, 1056-57 (La.App. 2 Cir., 1982). The principles of construction and the plain words of the Charter lead us to conclude that Section 1-06 may only be invoked in the exercise of the police power of the City.
It is well-settled that the police power refers to the "authority to impose restraints on private rights which are necessary for the general welfare of its citizens." City of New Orleans v.State, 364 So.2d 1020, 1022 (La. 1978) (citations omitted). Police power is also commonly defined as follows:
Police power is the power of a governmental body to regulate reasonably the actions of its individual citizens in order to protect or promote the public health, safety, morals, peace, or general welfare.
State v. Brenan, 1998-2368 (La.App. 1 Cir. 7/1/99), 739 So.2d 368, 371. There are two elements of this definition of police power; the first being that the law in question imposes restraints on private rights or regulates the actions of individual citizens:
The police power of the State, which is coextensive with sovereign power, denotes the power of the state to impose restraints on private rights which are for the general welfare. *Page 7 
 Michell v. Louisiana State Board of Optometry Examiners,245 La. 1, 15, 156 So.2d 457, 463 (La. 1963). The relevant portion of Ordinance 2009-29 changes the distribution of budgetary, or appropriations, powers between the legislative and executive branches of City government. The ordinance is neither a restraint of private rights, nor a regulation of individual citizens. City ofNew Orleans, supra, at 1022; Brenan, supra, at 371;Michell, 156 So.2d at 463.
The second element of the definition of police power is that the law in question be enacted in order to protect or promote the public health, safety, morals, peace, or general welfare.Id. This has been interpreted to include several types of laws:
Under [the police] power the state may enact laws to protect and preserve social order, to restrict and punish crime, to preserve the public peace, to safeguard and protect the health and morals of the people, even though the effect of such laws is to strike down private contracts, to deprive the citizen of his liberty to contract and to take from him or destroy his property.
State v. Edwards, 2000-1246, p. 14 (La. 6/1/01),787 So.2d 981, 992. The relevant portion of Ordinance 2009-29 was not enacted for any of the purposes enumerated in these cases. The ordinance was enacted to shift power over certain appropriations from the office of the mayor to the city council.
Because Ordinance 2009-29 does not restrain private rights, and does not serve to protect the public health, safety, morals, peace, or general welfare of the citizens, it is the conclusion of this office that the ordinance is not an exercise of the police power of the City. It follows that the Ordinance 2009-29 is not an exercise of the special powers of the city pursuant to Section 1-05 of the charter, but instead is an exercise of the general powers of the City pursuant to Section 1-06 of the Charter. It is therefore the opinion of this office that the portion of Ordinance 2009-29 that purports to restrict the Mayor's authority to make intradepartmental transfers is invalid because it conflicts with Section 5-04(D) of the Charter. *Page 8 
Councilman Blackall's questions
Turning now to the nine individual questions posed by Council President Blackall, we answer each question in the order it was presented:
1. Is the attached Budget amendment ordinance [Ordinance 2009-29], the execution of a Special Home Rule Charter Power, in any way inconsistent with the Louisiana Constitution?
This first question incorrectly describes Ordinance 2009-29 as an exercise of the special powers of the City. As noted above, the relevant portion of the ordinance is not an exercise of the police power, but is an exercise of the general powers of the City. The relevant portion of Ordinance 2009-29 that purports to restrict the Mayor's authority to make intradepartmental transfers conflicts with Section 5-04(D) of the Charter. To the extent that Article VI, Section 5(E) of the Constitution provides that a Home Rule Charter "shall provide the structure and organization, powers and functions of the government of the local governmental subdivision," the ordinance could be considered inconsistent with the Louisiana Constitution.
2. Is the attached Budget amendment ordinance [Ordinance 2009-29], the execution of a Special Home Rule Charter Power, expressly denied to a Home Rule Charter by any General Law of the State?
This second question also incorrectly assumes that Ordinance 2009-29 is an exercise of the special powers of the City. As noted above, the relevant portion of the ordinance is not an exercise of the police power, but is an exercise of the general powers of the City. We are not aware of any particular statute that denies a local governmental subdivision the power to enact the relevant portion of Ordinance 2009-29.
3. Does the presence of a Charter limitation in General Home Rule charter Power (Cov. Charter 1-05) and absence of a Charter limitation in Special Home Rule Charter Power (Cov. Charter 1-06) mean that Ordinances exercising Special Home Rule Charter Power may be inconsistent with the Charter?
The inclusion of the limitation in Section 1-05 of the Charter and the absence of such limitation in Section 1-06 of the Charter is indicative that an exercise of special powers of the City would not be limited by other provisions of the Charter. *Page 9 
4. May the Council require post-transfer notification of amounts which are within the Mayor's discretion to transfer under 5-04(D)? Is this request a reasonable request as described in 3-09(A)(7-9)?
The Council cannot limit the Mayor's authority to make intradepartmental transfers of unencumbered funds pursuant to Section 5-04(D) of the Charter. Therefore, the Council cannot require post-transfer notification of intradepartmental transfers as a condition of the mayor's authority to make such transfers. Section 3-09(A)(6) requires the mayor to submit a complete financial and administrative report to the council:
The mayor, as chief executive officer of the city, shall have the following powers and duties:
***
(6) Submit to the council and make available to the public, within sixty (60) days after the end of the fiscal year, a complete report on the finances and administrative activities of the city as of the end of each fiscal year.
Charter, § 3-09(A)(6). This report would, in all likelihood, reflect any intradepartmental transfers made by the mayor.
With regard to the reasonableness of a request for additional reporting, you reference Section 3-09(A)(7):
The mayor, as chief executive officer of the city, shall have the following powers and duties:
***
(6) Make such other reports as the council may reasonably request to enable the council to conduct its councilmanic function.
Charter, § 3-09(A)(7). We are unable to render an opinion as to the reasonableness of such request without any information as to the form or content of such report, and without any information sufficient to determine whether such report would be necessary for the Council to "conduct its councilmanic function." Id.
You also reference Section 3-09(A)(9):
The mayor, as chief executive officer of the city, shall have the following powers and duties: *Page 10 
***
(9) Perform such other duties as are specified in this charter or may be required by the council.
Charter, § 3-09(A)(7). While the council may require other duties of the mayor under this provision, such request may not conflict with any provision of the Charter. As such, any request for a report would have to comply with the previously cited Section 3-09(A)(7), and could not restrict the mayor's authority to make unilateral intradepartmental transfers of unencumbered funds.
5. May the Council require that the Mayor notify the Council in advance of transfers exceeding a set amount? Unlike Ordinances, Resolutions do not have the force of law. The Resolution requirement has the effect of requiring pre-notification and allowing Council to provide their opinion on changes to the budget they adopted by Ordinance. Is such prior notification a requirement that may legitimately be imposed upon the Mayor under 3-09(A)(7-9)?
For the reasons set forth above, the Council cannot limit the Mayor's authority to make intradepartmental transfers of unencumbered funds pursuant to Charter Section 5-04(D). The fact that the notice is pre-transfer or post-transfer, or that the approval is by ordinance or by resolution, does not change our analysis or our conclusion.
6. Is this Amendment enforceable because it is language in the Budget Ordinance itself, as opposed to being a separate Ordinance addressing budgetary spending?
The fact that Ordinance 2009-29 is a budget ordinance does not change the fact that the relevant portion of the ordinance purporting to limit the mayor's authority to make intradepartmental transfers of unencumbered funds is inconsistent with the Charter. The relevant portion of the ordinance is not enforceable.
7. Is the charter provision requiring a Council Ordinance to appropriate funds or adopt a budget (Cov. Charter 2-11(A)(4)) inconsistent with the financial procedure authorizing Budget Amendment by Transfer of Appropriations by the Mayor acting alone (Cov. Charter 5-04(D))? *Page 11 
The referenced sections of the Charter are not inconsistent; they reflect a reasonable allocation of budgetary power that was approved by the 1978 adoption of the Charter, and again by the 2008 rejection of the proposed amendment to the Charter.
8. Are these requirements substantive or procedural? If different will the substantive law prime the procedural law in the event of a conflict?
It is our opinion that Sections 2-11(A)(4) and 5-04(D) of the Charter are substantive laws allocating the relative powers over appropriations.
9. The provision that allows the Mayor to make interdepartmental [sic] transfers does not exclude the Council by name. May the Council likewise amend the budget to make or reverse interdepartmental [sic] transfers?[1]
The absence of a prohibition of the Council from a particular provision in the Charter cannot confer the authority vested by that provision upon the Council. Likewise, the mayor cannot unilaterally adopt ordinances, even though the mayor is not specifically excluded by Section 2-12 of the Charter concerning ordinances. The Council may not amend the budget to make or reverse intradepartmental transfers pursuant to Section 5-4(D).
Mayor Watkins' question
Finally, we respond to Mayor Watkins' sole question:
[I]s Ordinance Number 2009-29 enforceable as it conflicts with the City Charter which may only be amended by a vote of the City's electors? *Page 12 
For the reasons given above, it is our opinion that the portion of Ordinance 2009-29 that purports to restrict the Mayor's authority to make intradepartmental transfers is invalid and unenforceable because it conflicts with Section 5-04(D) of the Charter.
We trust that this opinion adequately responds to your respective requests, and thank you for the opportunity to be of service. If you have any questions or comments, please do not hesitate to contact our office.
Sincerely yours,
JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
By: __________________________ Charles W. Belsom, Jr. Assistant Attorney General
JDC:CWB:Irs
[1] The prefix "inter-" is from the latin word inter, and means "among." Black's Law Dictionary (8th ed. 2004). The prefix "intra-," also from the latin language, means "within." Id. The term "interdepartmental" therefore means among, or between, departments; while the term "intradepartmental" means within the same department. Given the fact that the Charter does not confer power over interdepartmental transfers to the mayor, while it specifically reserves power over interdepartmental transfers to the Council, we presume that the requester intended to use the term intradepartmental rather than interdepartmental.